# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
March 13, 2002 Session

## STATE OF TENNESSEE v. TIMOTHY WAYNE GRIMES

### Direct Appeal from the Circuit Court for Dickson County
### No. CR-5343     Allen Wilson Wallace, Judge

_____

### No. M2001-02385-CCA-R3-CD -  Filed August 16, 2002

_____

Defendant was convicted of criminal trespass and resisting arrest.  On appeal, defendant asserts that (1) there was insufficient evidence to sustain the convictions, (2) the trial court's instruction to the jury was error in that it went to the "ultimate issue" of defendant's guilt of criminal trespass, and (3) the trial court abused its discretion in allowing defendant to be impeached with a prior conviction for aggravated assault.  We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY, J., joined.  THOMAS T. WOODALL, J., not participating.

William (Jake) Bradley Lockert III, District Public Defender; Christopher L. Young, Assistant Public Defender (at trial and on appeal); and Merrilyn Feirman, Nashville, Tennessee (on appeal), for the appellant, Timothy Wayne Grimes.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General;  Dan Mitchum Alsobrooks, District Attorney General; and Suzanne M. Lockert, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Defendant, Timothy Wayne Grimes, was indicted by a Dickson County Grand Jury on one count of criminal trespass, in violation of Tennessee Code Annotated section 39-14-405, and one count of resisting arrest, in violation of Tennessee Code Annotated section  39-16-602.  He was tried by a jury, convicted on both counts, and subsequently sentenced to thirty days in the county jail for criminal trespass and six months for resisting arrest.  The trial court ordered the sentences to run concurrently.  Defendant filed a motion for new trial, which was heard and denied.  This appeal timely followed.

**Facts**

Dickson City police officer, Jay David Cole, testified that on September 23, 2000, he was dispatched to the apartment of Steve Hurst in reference to an unresponsive person located in the apartment. Upon entering the apartment, he found defendant, who appeared to be dead. When the officer identified himself, defendant woke up and became violent and threatening. Cole then allowed defendant to leave.

Officer Cole then learned via radio that defendant had previously been ordered to stay away from the apartment complex by the manager, Buford Reed. Reed told police that he would obtain a warrant against defendant for criminal trespass. Thereafter, Officer Cole got into his patrol car and found defendant walking down a sidewalk on Martin Luther King Boulevard, which is only a short distance from Hurst's apartment. Officer Cole testified that he stopped defendant and informed him that he was under arrest for criminal trespass, at which time defendant walked away. Officer Cole again directed defendant to stop, but defendant continued to walk. When Officer Cole attempted to handcuff defendant, defendant "used force" and "locked his arms" to prevent arrest. He stated that defendant "made a throat sound" and had "spit" in his mouth. Officer Cole and another officer had to grab defendant's head to keep him from spitting at them. He stated that defendant "used force to keep me from handcuffing him" and further stated that he pulled on defendant's arm so much to get him handcuffed that "I thought I had torn his shirt."

Officer Bryan Beasley was the first backup officer to arrive, and he and Officer Cole took defendant into custody. Officer Cole testified that as they took defendant into custody, they were slightly to the side and behind, and that each one had one of defendant's arms. He stated that defendant stiffened his arms for a while and would not allow his arms to be pushed together in order to be handcuffed. Defendant ultimately allowed them to handcuff him. He stated that defendant did not actually spit at him, but he believed that defendant was about to do so.

Officer Beasley testified that when he arrived at the apartment, defendant appeared to be asleep. He stated that when Officer Cole spoke to defendant, defendant awoke and became very abusive and agitated. He stated that, had he been the primary officer on the scene, he would have arrested defendant for disorderly conduct. After defendant left the apartment, the officers were alerted by Mr. Reed that Reed was going to obtain a warrant for defendant, at which point both officers began looking for defendant. He stated that upon trying to arrest defendant, defendant "threw his arms back" and "he bowed up on us." He said that defendant "swelled up on Cole" and "I grabbed his arms and he stiff armed us." Officer Beasley further stated that Officer Cole could not pull one of defendant's arms around to handcuff him because "defendant was "stiff arming us and Cole had to force him." He stated that defendant attempted to spit on them after he was handcuffed.

Daren Davidson, a paramedic with the Dickson Fire Department, testified that he heard defendant yelling, "I don't need any f— help," and refused medical treatment. He stated that he observed defendant becoming aggressive toward the officers and believed that defendant might

"jump" Officer Cole. He testified that defendant was the most aggressive overdose call that he had ever witnessed.

Hurst testified that defendant came into his apartment unannounced, though Hurst allowed him to enter. He stated they were friends and that defendant had been visiting with him that evening. He further stated that he was unaware that defendant had previously been banned from the property by Buford Reed, manager of the Dickson Housing Authority. Shortly after his arrival, defendant passed out. Hurst attempted to awaken defendant for about thirty minutes and believed that defendant might have been on drugs. He waited for police outside. When the police arrived, Hurst told the officers that he "just wanted [defendant] out." He stated that when defendant woke up, he was "rude" and "violent" toward the police. Hurst stated that defendant was uncooperative and walked away from the police.

Buford Reed, the manager of the Dickson Public Housing Authority, testified that he had previously informed defendant that he was not to be on the property of the apartment complex because of previous problems. He admitted that he did not personally see defendant on the property that day and had not told defendant on that day to leave the property. He also stated that he did not know of any problem defendant caused on the property that day. Reed stated that he was contacted by one of the patrolmen and advised the patrolman that he had previously told defendant not to be on the property. He also told the officer that he would sign a warrant. He stated that the apartment where defendant was located was on the property of the public housing authority. He further stated that the sidewalk upon which defendant was subsequently confronted was also public housing authority property. Finally, Reed said that the apartments belonging to the public housing authority are not open to the public.

Defendant testified that he had worked on the day of the incident and fell asleep in Hurst's apartment because he was tired. He asserted that it "takes a long time to wake me up." He stated that he was never told to stay off the property. He also stated that he was peaceful when Officer Cole first arrived. However, he said he had no reason to stop for the police because he had done nothing wrong. He said that his sister lived in the complex and that he visited her on numerous occasions. He acknowledged stiffening his arms when officers attempted to handcuff him, but he ultimately allowed them to handcuff him. He stated that he stiffened his arms because he felt like he should not have been arrested. He testified that he is distrustful of the police and even told Officer Cole to shoot him "because I wanted them to shoot me."

During defendant's testimony, and over the objection of defense counsel, the State introduced a prior conviction of defendant for aggravated assault for the purposes of impeachment. The jury returned a verdict of guilty on both the criminal trespass and resisting arrest charges.

**Analysis**

I.    *Sufficiency of Evidence*

When a defendant challenges the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn.1985). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978).

The credibility of witnesses, the weight of their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App.1993). A jury verdict for the State accredits the testimony of the State's witnesses and resolves all conflicts in favor of the State. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Moreover, a guilty verdict removes the presumption of innocence enjoyed by defendants at trial and replaces it with a presumption of guilt. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Thus, a defendant challenging the sufficiency of the evidence carries the burden of illustrating to this Court why the evidence is insufficient to support the verdict. State v. Freeman, 943 S.W.2d 25, 29 (Tenn. Crim. App. 1996).

*Criminal Trespass*

Tennessee Code Annotated section 39-14-405 states that a person commits criminal trespass who "knowing he does not have the owner's effective consent to do so, enters or remains on property, or a portion thereof."

The evidence reveals that the apartment manager of the Dickson County Housing Authority, Buford Reed, previously had problems with defendant and had told defendant to stay off of the property. The evidence also reveals that defendant was found in an apartment on the property after Reed had advised him to stay off the property. He was subsequently arrested while walking along a sidewalk located on property owned by the apartment complex. Although defendant asserted at trial that he was never told to stay off of the Dickson County Housing Authority property, Mr. Reed testified otherwise and issues of credibility are to be resolved exclusively by the jury. Thus, we conclude sufficient evidence exists to support defendant's conviction.

-4-

*Resisting Arrest*

A person resists arrest by "intentionally prevent[ing] or obstruct[ing] anyone known to the person to be a law enforcement officer . . . from effecting [an arrest] . . . by using force against the law enforcement officer or another." Tenn. Code Ann. § 39-16-602(a). Force is defined as "compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purposes of this title." Tenn. Code Ann. § 39-11-106(a)(12) (1997); State v. Tidwell, No. 01C01-9807-CC-00288, 1999 WL 436840, *2 (Tenn. Crim. App. at Nashville, June 30, 1999), perm. to appeal denied (Tenn. 1999); State v. Isibor, No. 01C01-9610-CC-00441, 1997 WL 602945, *2 (Tenn. Crim. App. at Nashville, Sept. 30, 1997), perm. to appeal denied (Tenn. 1998).

According to defendant, this case is analogous to State v. Corder, 854 S.W.2d 653 (Tenn. Crim. App. 1992). We disagree. In Corder, the defendant "refused to get into the patrol car and used obscene language at the officers." Corder, 854 S.W.2d at 655. This was insufficient proof of force, and the conviction for resisting arrest was dismissed. Id.

In the instant case, the evidence reveals that defendant not only used obscenities at the police but also locked his arms, thus preventing the officers from putting handcuffs on him. He also threw his arms back and "bowed up" on them as they attempted to arrest him. Construing the term "force" broadly as we are required to do, we conclude that there is sufficient evidence to support defendant's conviction for resisting arrest.

## II.     *Impeachment by Prior Conviction*

Under Rule 609 of the Tennessee Rules of Evidence, there are specific procedures to be followed before prior convictions of a criminal accused may be admitted into evidence for impeachment purposes. The State must provide the accused with written notice prior to trial of the proposed impeaching conviction(s). Tenn. R. Evid. 609(a)(3). Prior to the testimony of the accused, the trial court must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. Id. Additionally, the court must "analyze the relevance of the impeaching conviction as to the issue of credibility" and "explain [the relevance] on the record," and then "assess the similarity between the crime on trial and the crime underlying the impeaching conviction." State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999) (quoting Neil P. Cohen et al., Tennessee Law of Evidence § 609.9 at 376 (3d ed. 1995)). A trial court's ruling on the admissibility of prior convictions to impeach a defendant will not be overturned unless the trial court has abused its discretion. See State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

The defendant maintains that he was unfairly prejudiced by the trial court's admission of a prior aggravated assault conviction to impeach his credibility. Specifically, he asserts that the crime of resisting arrest, for which he was on trial is substantially similar to the crime of

aggravated assault. We first note that the defendant submitted a statement of the evidence, pursuant to Tennessee Rule of Appellate Procedure 24(c), rather than a transcript of the trial proceedings. Additionally, his only reference to the alleged impeachment error in the statement of evidence was the following:

> During the Defendant's testimony the Court allowed the State, for purposes of impeachment, to ask the Defendant about an aggravated assault conviction he received on July 21, 1994. This was done over the objection of the defendant.

As such, the record on appeal contains no evidence regarding whether the trial court complied with the requirements set forth in Rule 609 of the Tennessee Rules of Evidence.

It is the duty of the defendant as the appealing party to prepare an adequate record for appellate review. Tenn. R. App. P. 24(b). "When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). In the absence of an adequate record on appeal, this Court must presume that the trial court's rulings are supported by sufficient evidence. State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Therefore, the issue is waived. Tenn. R. App. P. 24(b).

### III.    *Jury Instruction*

Finally, defendant alleges that the trial court erred when it instructed the jury on the "ultimate issue" regarding defendant's guilt of the criminal trespass charge. In its charge to the jury, the trial court submitted the following:

> If a police officer knows a person has been ordered to say off housing project property and subsequently sees the person on the prohibited property, the officer can lawfully arrest the person for criminal trespass.

The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30. "[The] defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Our law requires that all of the elements of each offense be described and defined in connection with that offense. State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). Erroneous jury instructions require a reversal unless the error is harmless beyond a reasonable doubt. See Welch v. State, 836 S.W.2d 586 (Tenn. Crim. App. 1992).

First, we agree with the State's assertions that all of the trial court's instructions to the jury were correct statements of law and the jury was sufficiently and accurately charged

regarding the applicable law of criminal trespass provided in Tennessee Code Annotated § 39–14-405. Further, defendant has not shown if or how he was prejudiced by the trial court's instruction. Any resulting error on the trial court's part was harmless. The issue is without merit.

## CONCLUSION

Accordingly, we affirm the trial court's judgment.

_____
JOHN EVERETT WILLIAMS, JUDGE