**Bennie Joe WELCH, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 6, 1992.

Permission to Appeal Denied by Supreme Court May 26, 1992.

Edward C. Miller, Public Defender, Fourth Judicial Dist., Dandridge, Thomas Edward Kimball, Asst. Public Defender, Martha J. Yoakum, Public Defender, Eighth Judicial Dist., Tazewell, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Clinton J. Morgan, Special Asst. Atty. Gen., Nashville, G. Scott Green, Asst. Dist. Atty., Fourth Judicial Dist., Sevierville, James L. Gass, Asst. Dist. Atty., Fourth Judicial Dist., Newport, for appellee.

## OPINION

WADE, Judge.

The petitioner, Bennie Joe Welch, appeals from the trial court's denial of his petition for post-conviction relief. Serving life sentences from convictions arising out of both Jefferson County and Union County, the petitioner submits the following issues for review:

(1) whether the petitioner was denied the effective assistance of counsel;

(2) whether certain expert testimony served to deny the defendant due process of law;

(3) whether jury instructions unconstitutionally shifted the burden of proof to the defendant on the issue of malice.

We find no reversible error and affirm the judgment of the trial court.

On August 11, 1979, the petitioner was convicted of first degree murder in Union County.[1] He was sentenced to a term of life imprisonment. Our court affirmed. *State v. Bennie Joe Welch*, No. 16 (Tenn. Crim.App., Knoxville, February 12, 1981). On October 24, 1979, the petitioner was

---

1. At the time of the petitioner's convictions, both Union County and Jefferson County were a part of the Fourth Judicial District. On Septem-ber 1, 1982, Union County became a part of the Eighth Judicial District.

convicted in Jefferson County of first degree murder, employing a firearm in the commission of the murder, and armed robbery. The effective sentence, as corrected on appeal, was established at life plus five years. This sentence is consecutive to the life sentence imposed in Union County. *State v. Bennie Joe Welch*, No. 24 (Tenn. Crim.App., Knoxville, April 30, 1981).

On June 21, 1989, the petitioner filed post-conviction petitions in both Union and Jefferson Counties. The grounds alleged in each petition were similar; the cases were, therefore, consolidated for an evidentiary hearing. At the conclusion of the evidentiary hearing, the trial court found, among other things, as follows:

(1) that the defendant was effectively represented by his counsel in each trial;

(2) that there was no constitutional deprivation in relation to the testimony of Dr. Samuel Peiper, a psychiatrist who provided expert testimony for the state on the insanity issue; and

(3) that the instruction permitting a presumption of malice by the use of a weapon, if error, was harmless beyond a reasonable doubt.

Both petitions were denied. In this appeal, counsel for the petitioner in the Union County case, acknowledging the similarity of the issues, has adopted by reference the brief filed on the petitioner's behalf in the Jefferson County case.

### I

Initially, the petitioner claims that his trial counsel failed to present a double jeopardy issue relative to the armed robbery conviction in Jefferson County. The petitioner cites *Briggs v. State*, 573 S.W.2d 157 (Tenn.1978),[2] for the proposition that an accused may not be convicted of both felony murder and the underlying felony. *See Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). The petition-

er also argues that the *Briggs* rationale should have precluded any enhancement of the life sentence by virtue of the petitioner's use of a firearm and asserts that any first degree murder conviction in Jefferson County separate and apart from the felony murder conviction would also violate double jeopardy. *See Acres v. State*, 484 S.W.2d 534 (Tenn.1972).

Our court, on direct appeal, set aside the separate conviction for employing a firearm in the commission of the murder. *See State v. Hudson*, 562 S.W.2d 416 (Tenn. 1978). The five-year enhancement, for the use of the weapon, was entirely proper. Further, the record establishes that the felony murder merged into the first degree murder conviction. Only one life sentence was imposed in Jefferson County. The petitioner's double jeopardy argument, therefore, only applies to the conviction for armed robbery.

The state contends that the *Briggs* decision applied only to a felony murder and the underlying felony. Because the felony murder merged into the offense of first degree murder, an offense requiring the additional element of malice, the state insists that the separate convictions of first degree murder and armed robbery may stand. *State v. Norris*, 684 S.W.2d 650, 654 (Tenn.Crim.App.1984).

 The Jefferson County homicide is, in fact, one of first degree murder. If a felony murder, double jeopardy principles would have indeed precluded any conviction for armed robbery. *State v. Strouth*, 620 S.W.2d 467 (Tenn.1981) (confirmed the rule established in *Briggs*). In *Norris*, however, our court held that convictions for both first degree murder and armed robbery could stand even when the convictions arose out of the same incident, where the indictment, in common law form, charges that the murder was willful, deliberate, premeditated, and malicious. Tenn.Code

---

**2.** The ruling in *Briggs* was called into question by *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), and was altogether abandoned in *State v. Blackburn*, 694 S.W.2d 934 (Tenn.1985). It was the law, however, at the time of the petitioner's trial. *Black-*

*burn* would not preclude both robbery and felony murder convictions on double jeopardy grounds. That perhaps explains the petitioner's reliance upon the argument that his counsel was ineffective for not raising the issue at the time of trial.

Ann. § 39–2–202(a)(1982). *See State v. Black*, 524 S.W.2d 913 (Tenn.1975). The test for the application of double jeopardy principles is whether there is a separate indictment for murder in the common law form. Here there was. Both the first degree murder conviction[3] and that of armed robbery may, therefore, stand.

■ Because we find no constitutional infirmity, the armed robbery conviction, for which a separate evidentiary basis exists, may stand. Consequently, counsel was not ineffective for having failed to present the issue. There was no prejudice. *Baxter v. Rose*, 523 S.W.2d 930 (Tenn.1975); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## II

■ The petitioner next claims that he was denied due process and equal protection when the trial court permitted the state's expert, a psychiatrist, to interpret the results of a Rorschach test administered to the petitioner:

Q. You may testify, Sir, as to what the Rorschach test revealed?

A. Yes, the Rorschach test responses were consistent with realistic thinking, with there being evidence of psychological conflicts, in severe degree.... Although his Rorschach indicates paranoid attitudes, there is no definite indication of a loss of awareness of reality, there is no evidence that he cannot differentiate between reality and his own private thoughts....

The expert had previously testified that the Rorschach exam is generally interpreted by a psychologist. Nonetheless, the trial court permitted the testimony.

The testimony established that the Rorschach test was administered to the petitioner by a clinical psychologist who was acting under the general supervision of the state's psychiatrist. Those results were ultimately submitted to the psychiatrist for evaluation. There appears to be no error by the admission of the evidence. In any event, it is doubtful that the evidence, even if it should have been excluded, would have been anything more than evidentiary error. Post–conviction relief is only warranted when the judgment "is void or voidable because of the abridgment ... of any right guaranteed by ... the Constitution." Tenn.Code Ann. § 40–30–105.

In summary, we do not find any constitutional infringement with respect to either of the two convictions in Jefferson County.

## III

The petitioner's final argument is that the trial court's instruction on the element of malice with respect to each murder conviction violated due process. The petitioner also claims that his trial counsel in each county were ineffective for having failed to object to the instruction.

On June 18, 1979, the United States Supreme Court held that jury instructions, similar to those given in each of these cases,[4] violated the fourteenth amendment to the United States Constitution by relieving the state of the burden of proving each element of the criminal offense beyond a reasonable doubt. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Each of the two murder trials at issue took place within months after the release of the *Sandstrom* opinion.

On October 9, 1984, in *State v. Bolin*, 678 S.W.2d 40 (Tenn.1984), our Supreme Court acknowledged the rule in *Sandstrom* prohibiting an instruction allowing the presumption of malice by use of a deadly weapon. In *Bolin*, however, with overwhelming evidence against the defendant, the Supreme Court held that the error in instruction was harmless beyond a reasonable doubt. *Id.* at 45. *See Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460

3. The record reflects that the trial court merged the conviction for felony murder, on a separate indictment, into the first degree murder conviction.

4. The actual charge appears to be as follows: "If it is shown beyond a reasonable doubt that the alleged victim was killed, the killing is presumed to be malicious, in the absence of evidence which would rebut the implied presumption."

(1986). On December 30, 1985, however, our Supreme Court reversed a conviction based upon an erroneous charge on the issue of malice. *State v. Martin,* 702 S.W.2d 560 (Tenn.1985).[5] The holding in *Sandstrom* has been given retroactive application. *Swanson v. State,* 749 S.W.2d 731, 733 (Tenn.1988); *Daniel Carl Brewer v. State,* No. 1179, 1991 WL 21605 (Tenn. Crim.App., Knoxville, February 22, 1991) (*APTA denied* June 17, 1991). *See State v. Coker,* 746 S.W.2d 167 (Tenn.1987).

■ The state argues that counsel could not have been ineffective because the instructions were in compliance with established law. We agree. Prior to the holding in *Sandstrom,* the law of Tennessee was that all homicides were presumed to be malicious in the absence of evidence to the contrary. *Everett v. State,* 528 S.W.2d 25, 26 (Tenn.1975); *Sikes v. State,* 524 S.W.2d 483, 485 (Tenn.1975). A number of published and unpublished opinions thereafter overlooked the *Sandstrom* holding. Our Supreme Court has recognized that some time interval "is necessary for a previously unrecognized rule of law to be applied in practice...." *Swanson v. State,* 749 S.W.2d 731, 736 (Tenn.1988). Under these circumstances, we can find no deficiency in performance at the time of the trial in 1979. Less than two months had passed before the Union County trial. Only four months elapsed before the Jefferson County proceeding.

Likewise, the malice instruction, although erroneous, was perfectly understandable in each instance. The instruction was, however, error. The issue we must resolve is whether the error was harmless beyond a reasonable doubt. The trial court so found. Our concern is whether the evidence preponderates against those findings. *Clenny v. State,* 576 S.W.2d 12 (Tenn.Crim.App.1978).

■ We will first examine those facts which led to the petitioner's conviction for the first degree murder of Franklin Park in Jefferson County. In each of three state-

ments made to authorities, the petitioner admitted some involvement in the crime. On direct appeal of the Jefferson County convictions, our court summarized the salient facts:

At about 6:00 p.m. on December 18, 1978, the defendant took agent Davenport and other officers to the Holston River Bridge in Knox County. He indicated to them that he had thrown a .22 caliber pistol and a .38 caliber revolver into the river at that location. Further, he indicated that the .22 caliber pistol had been the murder weapon, and that the .38 caliber revolver had been taken from Park. When they returned from the bridge, the defendant admitted to the officers that he had killed Park, and said that a man had hired him to do the killing. He said that around 11:00 p.m. on October 29, 1978, he went to Park's house, ostensibly to discuss his divorce case. Park [a lawyer], who owned two doberman dogs which apparently were vicious, helped the defendant avoid the dogs, and let him into the house. They went into Park's living room where Park tossed his hat on the couch. Thereafter, the defendant went to the bathroom. When he returned, he put a .22 caliber pistol to Park's throat and told him not to move. He then asked Park where some diamonds were kept, and Park told him that they were in a "safety deposit box." The defendant did not believe Park, so he slapped him hard around the face, and thought that he had broken Park's jaw. The defendant then shot Park in the right jaw and again in the face. He took the money out of Park's wallet and put the wallet back in Park's pocket. The defendant also took Park's .38 caliber revolver. The defendant then opened a "sock drawer" expecting to find some diamonds, which he had been told would be located there, but all that he found was an empty velvet bag. The defendant went into the kitchen and ate a slice of tomato ... on a plate. As the defen-

---

5. The instruction on the issue of malice was essentially the same as in these cases. 702

S.W.2d at 563.

dant left the house, Parks' doberman dogs tried to get him, so he shot them. Subsequently, the defendant went to the Holston River Bridge where he threw the .22 caliber pistol and Parks' .38 caliber revolver into the river.

\* \* \* \* \* \*

Agent Davenport testified that none of the facts and circumstances regarding the description of the murder scene, nor information about the weapons, had been released prior to the time he talked with the defendant.

\* \* \* \* \* \*

The officers' testimony about the location of Park's hat on the couch, the holster on the floor, the open "sock drawer," the tomatoes and cheese in the kitchen, the empty wallet, the two doberman dogs, and many other details, corresponded exactly with the description of these things as detailed by the defendant in his statements. Although the murder weapon was not found, Park's .38 caliber revolver was found in the river where the defendant said he had thrown the guns.

Our court described the evidence as "overwhelmingly" indicative of guilt. Malice has been defined as an intent to do harm or cause injury to another, but not necessarily to cause death. *State v. Taylor*, 668 S.W.2d 681, 683 (Tenn.Crim.App. 1984). As to the Jefferson County conviction for first degree murder, the evidence was, we think, overwhelming. The error in the instruction, we hold, was harmless beyond any reasonable doubt.

The same is true with respect to the Union County conviction. Malice was not the essential issue. The victim, Jack Mackey, was shot to death in his bedroom, with a .38 pistol. There were four bullet wounds in his body. The petitioner admitted he shot the victim. The defense relied upon an insanity plea. Our opinion on direct appeal, containing a lengthy recitation of the facts, provides in part as follows:

> Welch had a .38 caliber pistol stuck in his pants, pulled it and shot Mackey once. Mackey did not go down and started at him. Welch fired again and Mackey fell

next to the bed. He only remembered firing twice. Welch and Mrs. Mackey returned to Lakeview where he tried to wash the blood off. He then drove [Mrs. Mackey's] Cadillac to a place where he took off his shoes and socks and threw them, along the gun, in the lake. He returned to Lakeview and went to bed, getting up at approximately 10:00 o'clock a.m. and going to Knoxville. He acknowledged the .38 caliber pistol ... as the gun he used to shoot Mackey.

One of the shots was fired after the victim had apparently fallen to the floor. All were fired from the same weapon. Much circumstantial evidence corroborated the petitioner's culpability. Premeditation, our court held, had been "firmly established." The intent to cause harm was, we think, apparent. The petitioner's pre-trial statement was particularly damaging. We find the element of malice was established beyond any reasonable doubt. The evidence does not preponderate against the trial court's holding that the error in instruction was harmless.

The judgment is therefore affirmed.

SUMMERS and TIPTON, JJ., concur.