# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### September 12, 2000 Session

## STATE OF TENNESSEE v. MARK WILLIAMS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-07919     Chris Craft, Judge**

---

**No. W1999-01456-CCA-R3-CD - Filed October 24, 2000**

---

The defendant, Mark Williams, was indicted for attempted first degree murder. After being convicted for attempted second degree murder, he was sentenced, as a Range I offender, to 12 years in the Tennessee Department of Correction. In this appeal of right, the defendant contends that because the indictment did not allege an overt act, the conviction is void. He further asserts that the jury charge on attempted second degree murder was erroneous in that it did not require the jury to find that he intended to kill the victim. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Samuel Perkins (on appeal and at trial) and Scott Crawford (at trial), Memphis, Tennessee, for the appellant, Mark Williams.

Paul G. Summers, Attorney General & Reporter, J. Ross Dyer, Assistant Attorney General, and James Wax and Elaine Sanders, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

In the spring of 1997, the defendant, Mark Williams, and the victim, Courtney White, shared an apartment in the Hickory Hills area in Memphis. During that time, the victim sold and transported drugs for the defendant. Later, when the victim moved out of the apartment and into his mother's home, he stopped selling drugs and began working two different jobs, one full-time and one part-time.

On March 30, 1998, the victim drove his mother's four-door 1993 Suzuki Sidekick to a gas station near Denim and Diamonds, a Memphis nightclub, where he picked up an acquaintance named Jason. When he drove to the club's parking lot, he noticed the defendant's parked car in his rearview mirror. While the defendant was not in the car, the victim concluded that he "was around" and decided to leave. Because, however, his vehicle was blocked by other traffic, the victim was unable to drive away. As he continued to watch the defendant's car in his rearview mirror, the victim looked to his left and saw the defendant standing outside of his vehicle with a gun in his hand. The defendant then fired several shots, one of which struck the victim in the back of the neck.

The victim was hospitalized for several days. Because the bullet had fractured his C1 and C2 vertebrae, the victim had to be fitted with a halo brace. He spent five to six weeks in the Baptist Rehabilitation Center. The bullet, still lodged in the victim's neck, cannot be removed. He is disabled and must use a quad-cane to walk.

The defendant testified on his own behalf at trial. According to the defendant, he lived in an apartment complex directly across the street from the Denim and Diamonds nightclub. He claimed that on the evening of the shooting, he had gone to the nightclub but was unable to get in because the show was sold out. As he was "walking through the parking lot hollering at females," the defendant came upon the victim and his cousin in their truck. He contended that he was not aware of the victim's presence until he heard the victim say, "[W]hat's up bitch[?]" The defendant claimed that the victim then pointed a gun at him. The defendant explained that he ran towards the rear of his vehicle, saw the victim shooting at him, and shot back. According to the defendant, he returned to his home later that evening and informed his mother what had happened. On her advice, he called an attorney and, upon the attorney's advice, turned himself in to the authorities.

I

The defendant first contends that the indictment charging him with attempted first degree murder should have been dismissed because it failed to allege an overt act. Generally, an indictment must set forth the elements of the offense. State v. Perkinson, 867 S.W.2d 1, 5 (Tenn. Crim. App. 1992). It is settled law that "[w]hen the indictment or presentment fails to fully state the crime, all subsequent proceedings are void." Id.

Provisions of our state and federal constitutions guarantee the criminally accused knowledge of "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9. "Fair and reasonable notice of the charges against an accused is a fundamental constitutional requirement." State v. Trusty, 919 S.W.2d 305, 309 (Tenn. 1996). To be sufficient, an indictment must "inform [the] defendant of the precise charges[;] . . . must enable the trial court upon conviction to enter an appropriate judgment and sentence; and . . . must protect [the] defendant against double jeopardy." Id. As a matter of fairness, the constitutional requirement is designed to afford the criminally accused with an adequate opportunity to prepare any defense before the trial. See, e.g., Pope v. State, 149 Tenn. 176, 258 S.W. 775 (Tenn. 1924); Daniel v. State, 50 Tenn. 257 (1871).

The offense of criminal attempt is defined as follows:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
>
> (b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.
>
> (c) It is no defense to prosecution for criminal attempt that the offense attempted was actually committed.

Tenn. Code Ann. § 39-12-101. A conviction under the criminal attempt statute requires proof of two material elements: (1) the culpability required for the attempted crime; and (2) an act in furtherance of the attempted crime. Wyatt v. State, 24 S.W.3d 319, 321 (Tenn. 2000). First degree murder, other than a murder committed during the perpetration or attempted perpetration of one of the felonies enumerated in Tenn. Code Ann. § 39-13-202(a)(2), is a "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1).

The indictment charging the defendant with attempted first degree murder provided in pertinent part as follows:

> THE GRAND JURORS of the State of Tennessee, duly selected, empaneled, sworn and charged to inquire for the body of the county of Shelby, Tennessee, upon their oath, present that:
>
> MARK WILLIAMS
>
> on March 30, 1998, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully attempt to commit the offense of First Degree Murder, as defined in Tennessee Code Annotated 39-13-202, in that he, the said MARK WILLIAMS, did unlawfully, intentionally, and with premeditation attempt to kill COURTNEY WHITE, in violation of T.C.A. 39-12-101, against the peace and dignity of the State of Tennessee.

Our supreme court recently addressed this issue in State v. Wyatt. In Wyatt, the defendant was charged with attempted first degree murder in an indictment which provided in pertinent part as follows:

> that WILLIAM TERRY WYATT on the 7th day of March, 1994, in Cumberland County, Tennessee, and before the finding of this indictment, did unlawfully, intentionally, deliberately and with premeditation attempt to kill Billie Carey in violation of T.C.A. 39-12-101 . . .

Wyatt, 24 S.W.3d at 324. Pursuant to a plea agreement with the state, Wyatt, who had been charged with several other offenses in addition to attempted first degree murder, pled guilty to attempted second degree murder and kidnapping. In a subsequent habeas corpus proceeding, Wyatt challenged his conviction and sentence as void on the basis that the indictment failed to allege an overt act. The supreme court, however, held that the language of the indictment was constitutionally and statutorily sufficient:

> We conclude that the indictment in this case satisfies these minimum requirements. Clearly [the defendant] was placed on notice that he was charged with the intentional, deliberate and premeditated attempt to kill the named victim on a date certain. The indictment was also sufficient to place the trial court on notice that a judgment and sentence for attempted first-degree murder were proper upon conviction. Finally, by expressly stating that the attempt to kill was made against a specific victim on a date certain, the indictment offers [the defendant] double jeopardy protection from any future charge of attempted murder against that victim on that date. Though the language "did . . . attempt to kill" is a general description, especially in light of the testimony at the preliminary hearing that [the defendant] committed multiple acts against the victim which the State could have relied upon to obtain a verdict, this language alleges an act as required by the criminal attempt statute and was sufficient to notify [the defendant] of the accused crime, to confer jurisdiction upon the trial court, and to protect against double jeopardy.

Id. at 324-25 (citation omitted).

The indictment charging the defendant with attempted first degree murder in this case is virtually identical to the attempted first degree murder indictment approved by our supreme court in Wyatt. Accordingly, the trial court properly denied relief.

II

Next, the defendant asserts that the trial court's instruction on attempted second degree murder was erroneous because it did not require the jury to find that he intended to kill the victim. The defendant did not raise this issue in his motion for new trial. As such, it is waived for purposes of appeal. See Tenn. R. App. P. 3(e), 36(a). Nevertheless, the instruction was not erroneous. See

State v. Palmer, 10 S.W.3d 638, 645 (Tenn. Crim. App. 1999) (addressing jury instruction challenge not included in motion for new trial because "a jury instruction which did not accurately charge the requisite mental state would substantially affect the defendant's rights" within the meaning of Tenn. R. Crim. P. 52(b)).

The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30. "[The] defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. See Sandstrom v. Montana, 442 U.S. 510 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). Erroneous jury instructions require a reversal unless the error is harmless beyond a reasonable doubt. See Welch v. State, 836 S.W.2d 586 (Tenn. Crim. App. 1992).

At the close of the proof, the trial court instructed the jury on attempted second degree murder as follows:

> Any person who attempts to commit a criminal offense is guilty of a crime.
> For you to find a person guilty of criminal attempt: Murder Second Degree, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
> 1. that the defendant intended to commit the specific offense of Murder Second Degree.
>
> and
>
> 2. that the defendant did some act intending to complete a course of action or cause a result that would constitute Murder Second Degree under the circumstances, as the defendant believed them to be at the time, and his actions constituted a substantial step toward the commission of Murder Second Degree. The defendant's actions do not constitute a substantial step unless the defendant's entire course of action clearly shows his intent to commit Murder Second Degree.
>
> The essential elements necessary to constitute Murder Second Degree are:
>
> 1. that the defendant unlawfully killed the alleged victim; and
> 2. that the killing was knowing.
> A person acts "knowingly" if that person acts with an awareness either:
> (1) that his conduct is of a particular nature;
>
> or
>
> (2) that a particular circumstance exists.

The instruction was based on T.P.I. – Crim. 4.01 (4th ed. 1995).

In State v. Eldridge, 951 S.W.2d 775, 779 (Tenn. Crim. App. 1997), this court specifically approved the language of T.P.I. – Crim. 4.01 (4th ed. 1995) in the context of an attempted second degree murder charge. More recently, in State v. Palmer, a panel of this court addressed an identical challenge to an attempted second degree murder instruction based on T.P.I. Crim. – 4.01. The court found no error in the charge:

> Because the trial court specifically charged that the jury must find that the defendant intended to commit second degree murder, we hold that the instruction was proper. The trial court's further instruction that second degree murder requires that the defendant act knowingly does not detract from the accuracy of this instruction.

Palmer, 10 S.W.3d at 645.

In our view, the ruling in Palmer controls. The charge required the jury to find that the defendant intended to commit second degree murder and that the defendant completed some act intended to ultimately result in second degree murder. This was a proper instruction. See State v. Craig Bryant, No. 02C01-9707-CR-00286 (Tenn. Crim. App., at Jackson, Jan. 8, 1999) (holding that there was no error in attempted second degree murder instruction based on T.P.I. Crim. – 4.01 (4th ed. 1995)); State v. David Allen Vaughn, No. W1999-01647-CCA-R3-CD (Tenn. Crim. App., at Jackson, Dec. 27, 1999) (holding that trial court properly instructed the jury on attempted second degree murder pursuant to T.P.I. Crim. – 4.01 (4th ed. 1995) and denied the defendant's request for a special instruction requiring a finding of a specific intent to "kill").

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE