IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 14, 2003 Session

## STATE OF TENNESSEE v. PHILLIP M. MULLINS

**Direct Appeal from the Circuit Court for Putnam County**
**No. 99-0599    Leon Burns, Jr., Judge**

---

**No. M2002-02977-CCA-R3-CD - Filed December 29, 2003**

---

The defendant was indicted by a Putnam County Grand Jury for one count of first degree murder, one count of especially aggravated robbery and one count of especially aggravated burglary. On September 18, 2000, the State filed a Notice of Intent to Seek Punishment of Imprisonment for Life Without Possibility of Parole. The Grand Jury later returned a Superceding Indictment including charges of First Degree Felony Murder, First Degree Premeditated Murder, Especially Aggravated Robbery and Especially Aggravated Burglary. At trial, the trial court reduced the premeditated first degree murder count to second degree murder for consideration by the jury. At the conclusion of the trial, the jury convicted the defendant of felony murder, second degree murder, especially aggravated robbery and especially aggravated burglary, and immediately sentenced the defendant to life without parole on the first degree felony murder count. The trial court merged the defendant's second degree murder conviction into the first degree felony murder conviction and sentenced the defendant to twenty-five (25) years for the especially aggravated robbery conviction and to twelve (12) years for the especially aggravated burglary conviction. The trial court ran the twenty-five (25) year sentence consecutive to the life without parole sentence and ran the twelve (12) year sentence concurrent to the twenty-five (25) year sentence. The defendant appeals from the trial court based on four issues: (1) Whether the trial court erred in instructing the jury; (2) whether the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt; (3) whether the Tennessee sentencing scheme for life imprisonment without parole is unconstitutional if the aggravating circumstances, contained in Tennessee Code Annotated section 39-13-204, are not part of the indictment; and (4) whether the Tennessee sentencing scheme for life imprisonment without parole is unconstitutional. We find these issues do not merit a reversal of this conviction and affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

John E. Appman, Jamestown, Tennessee, for the appellant, Phillip M. Mullins.

Paul G. Summers, Attorney General & Reporter; Kim R. Helper, Assistant Attorney General; Bill Gibson, District Attorney General; and David A. Patterson, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**


**Factual Background**

On August 17, 1999, Diana McCloud picked up her mother, Vernell Dixon, the victim, between 10:00 a.m. and 11:00 a.m. for a day of shopping. Mrs. McCloud dropped her mother off at her home between 3:00 p.m. and 4:00 p.m. Mrs. McCloud spoke with her mother by phone at 6:00 p.m. that night. The victim's granddaughter-in-law, Beverly Dixon, spoke with the victim by telephone around 7:00 p.m. Ms. Dixon then went by the victim's house at 6:20 a.m. on August 18, 1999 to pick up a letter they had discussed the previous evening. When she knocked on the door, the victim did not answer, and Ms. Dixon assumed she was still asleep.

On the morning of August 18, Mrs. McCloud's husband went to make some house repairs at the victim's house. He called Mrs. McCloud from the victim's house to tell her something was wrong with the victim and to call 911. Both Mr. And Mrs. McCloud were at the victim's house when the paramedics arrived around 10:00 a.m. After entering through the front door, the paramedics found the victim in the front bedroom. The victim was on her bed, with her clothes pulled up and abrasions on her face. She was motionless and not breathing.

The Cookeville Police Department and a team of forensic scientists from the Tennessee Bureau of Investigation ("TBI") came to the crime scene to gather evidence.

In December of 1999, the Putnam County Grand Jury indicted the defendant, Phillip M. Mullins, with one count of first degree murder, one count of especially aggravated robbery and one count of especially aggravated burglary. On September 18, 2000, the State filed a Notice of Intent to Seek Punishment of Imprisonment for Life Without Possibility of Parole. In the Notice, the State relied upon two aggravating circumstances: (1) the defendant had been previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person, and (2) the victim of the murder was seventy (70) years of age or older.

The Grand Jury later returned a Superceding Indictment on January 16, 2001. This indictment included charges of First Degree Felony Murder, First Degree Premeditated Murder, Especially Aggravated Robbery and Especially Aggravated Burglary. The defendant went to trial on October 17, 2001. After the State's proof, the trial court granted the defendant's motion for judgment of acquittal on the premeditated murder count and reduced the charge to second degree

murder before giving the case to the jury for its deliberations. At the conclusion of the trial, the jury convicted the defendant of felony murder, second degree murder, especially aggravated robbery and especially aggravated burglary. The jury immediately sentenced the defendant to life without parole on the first degree felony murder count.

On February 13, 2002, the trial court held a separate sentencing hearing for the other three counts. The trial court ordered the defendant's second degree murder conviction to be merged into the first degree felony murder conviction. Then the trial court sentenced the defendant to twenty-five (25) years for the especially aggravated robbery conviction and to twelve (12) years for the especially aggravated burglary conviction. The trial court ran the twenty-five (25) year sentence consecutive to the life without parole sentence and ran the twelve (12) year sentence concurrent to the twenty-five (25) year sentence.

## Jury Instructions

The defendant first argues that the trial court's instructions to the jury were error. The defendant specifically questions the trial court's following instructions:

> It is not necessary that each particular fact should be proved beyond a reasonable doubt if enough facts are proved to satisfy the jury beyond a reasonable doubt of all the facts necessary to constitute the crime charged.

The defendant argues that this instruction violates his constitutional rights because he claims that each fact or element must be proven beyond a reasonable doubt. He argues that this part of the instruction negates the requirement of proof beyond a reasonable doubt of each of the elements of a crime.

The trial court has a duty to "give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30. "[The] defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). However, the jury instruction must be reviewed in the context of the overall charge rather than in isolation. See Sandstrom v. Montana, 442 U.S. 510 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). Erroneous jury instructions require a reversal, unless the error is harmless beyond a reasonable doubt. See Welch v. State, 836 S.W.2d 586 (Tenn. Crim. App. 1992).

The instruction that the defendant complains of is one included in the Tennessee Pattern Jury Instructions. See T.P.I. 42.03 (5th ed.). Immediately before this instruction, the trial court charged:

> When the evidence is made up entirely of circumstantial evidence, then before you would be justified in finding the defendant guilty, you must find that all of the essential facts are consistent with the hypothesis of guilt as that is to be compared with the facts proved. The facts must exclude every other reasonable theory or

hypothesis except that of guilt, and the facts must establish such a certainty of guilt of the defendant as to convince the mind beyond a reasonable doubt that the defendant is the one who committed the offense.

In another part of the instructions, the trial court instructed the jury that "[t]he State must prove beyond a reasonable doubt all of the elements of the crime charged and that it was committed before the finding and returning of the indictment in this case." After defining each of the crimes charged, as well as the lesser-included offenses, the trial court again instructed the jury that to find the defendant guilty, "the State must have proven beyond a reasonable doubt the existence of the following essential elements . . . ."

Our supreme court faced an identical issue in State v. Bane, 853 S.W.2d 483 (Tenn. 1993). The defendant in Bane also complained that the trial judge instructed the jury that they did not need to find each particular fact beyond a reasonable doubt. Bane, 853 S.W.2d at 487. The circumstantial evidence instructions given by the trial court in Bane, are the same instructions based upon the Pattern Jury Instructions, given by the trial court in this case. In Bane, the supreme court held that these instructions were an accurate statement of the law and, therefore, there was no error in instructing the jury in this way. Id. at 488.

The defendant in this case relies upon Apprendi v. New Jersey, 530 U.S. 466 (2000) and Ring v. Arizona, 536 U.S. 584 (2002) to support his argument. He states that these two cases interpreted the United States Constitution to "mandate that each fact or element, which is a condition to the imposition of a sentence, must be decided by a jury beyond a reasonable doubt." His reading of Apprendi and Ring are correct. However, these cases are not applicable to the issue at hand. These cases addressed the situation when a trial court sentences a defendant by applying additional aggravating circumstances in the sentencing phase that have not been determined by the jury beyond a reasonable doubt. These cases do not require that every discrete fact in a criminal prosecution be proven beyond a reasonable doubt. It is only necessary that every element of the offense be proven beyond a reasonable doubt.

For these reasons, this issue is without merit.

**Sufficiency of the Evidence**

The defendant's next issue is whether there was sufficient evidence to convict the defendant. The defendant argues that there was no proof that the defendant was at the victim's house when she suffocated, that the defendant suffocated her, that there was no proof that the defendant took any property from the victim, or that the defendant entered the victim's house.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" state's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994);

State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the state "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

The evidence when taken in a light most favorable to the State is as follows. Diana McCloud, the victim's daughter, testified that she picked her mother up between 10:00 a.m. and 12:00 p.m. on August 17, 1999 to go shopping. They returned to the victim's house between 3:00 p.m. and 4:00 p.m. She spoke with the victim by telephone later that evening at 6:00 p.m. The victim's granddaughter-in-law, Beverly Dixon, also spoke with the victim around 7:00 p.m. They made plans for her granddaughter-in-law to pick up a letter from the victim to mail. When she went by the victim's house at 6:20 a.m. on August 18, the victim did not answer. So, her granddaughter-in-law thought the victim was still asleep. Later that morning, Mrs. McCloud's husband went to fix something at the victim's house. He called Mrs. McCloud about 10:00 a.m. on August 18 to tell her to call 911 because he thought something was wrong with the victim. The victim did not have any sort of relationship with the defendant, and he had never been in the victim's house.

Chris Westmoreland of the Cookeville Police Department testified that he arrived at the victim's house shortly after 10:00 a.m. in response to the 911 call. He found the victim in the front bedroom of her house lying in bed motionless. Her clothes were pulled up, and there were abrasions on her face.

Detective Sergeant David Gragg of the Cookeville Police Department arrived shortly after Officer Westmoreland. Detective Gragg stated that the victim's house had been ransacked. Several pieces of jewelry and the victim's wallet were scattered on the front bedroom floor. The wallet did not contain any money. The victim's daughter and granddaughter-in-law both stated that the victim usually kept $20.00 to $40.00 in this wallet. Dresser drawers were pulled out and had obviously been rifled through. The Cookeville Police found the victim's purse behind the bed after the Tennessee Bureau of Investigation ("TBI") left. The purse had around $2,000.00 in it and was returned to the family.

Detective Gragg also stated that the screen to the victim's back door had been cut or torn out and the hook and eye closure had been ripped out. In addition, Detective Gragg stated that the back door had been forced open as if someone had used their shoulder to open the door. There were

obvious shoulder prints where the door had been hit at least twice by someone's shoulder. Detective Gragg noticed that the victim's house was located about 800 feet from a bar named "John's Place."

Detective Gragg stated that the victim was lying on the bed in her front bedroom. A slat of the bed had been broken out of the bed. It looked as if someone had tried to get the victim's wedding band off of her hand. The victim's granddaughter-in-law testified that the victim's wedding band which consisted of a gold band and a marquis-shaped diamond were missing from the victim's finger. Detective Gragg also stated that the victim's clothes were pulled up, and her breast was partially exposed as if her bra had been pulled up.

Detective Gragg first had contact with the defendant around 11:15 p.m. on August 18 at the Criminal Justice center after the defendant's arrest. The defendant gave his shoes to an officer at that time. The defendant was wearing a black sleeveless t-shirt when the police arrested him. The defendant had less than $5.00 when he was arrested and did not have any kind of a ring with him.

Dr. Sullivan Smith is the Putnam County Medical Examiner. He did not do an autopsy of the victim, but did assign a cause and manner of death. He determined that the victim was eighty-seven (87) years old at the time of death. The official cause of death was suffocation. Dr. Smith determined that the time of death was around 11:00 p.m. on August 17. The doctor believes that the abrasions on the victim's face were from her face moving across the bed sheets, which were probably used to suffocate her. The doctor did find blood on the bed sheets.

Sandy Evans is a TBI agent who works in trace evidence or microanalysis. She mainly deals with fibers, paint, glass, shoe and tire tracks comparison, and gunshot residue. She arrived at the crime scene around 12:45 p.m. Agent Evans took carpet samples to compare to any fibers collected from a suspect's clothing. At the crime scene, she also found shoe tracks outside the victim's house and in the dust inside one of the bedrooms. She was able to make good castings from these tracks. She could not say how long the tracks had been there, but the shoe tracks were in powdery dirt, not mud, so any wind or rain would have destroyed the tracks. Agent Evans also found several shoe prints in the victim's back bedroom. There were seven (7) tread designs, but one design was very prevalent. She also made castings of these prints. She received the defendant's clothing and shoes around 11:40 a.m. At this time, she compared the castings and the shoes and found that three prints in the victim's back bedroom were made by the defendant's right shoe, a newspaper that was pushed up against the backdoor also had a partial print that matched the defendant's right shoe. The outside castings also matched the defendant's shoes.

Robert McFadden is also a TBI agent. Agent McFadden specializes in latent prints such as finger prints, palm prints, etc. He went to the crime scene with Agent Evans. He found fingerprints at the crime scene, but was unable to match any. He also found latent shoulder prints on the glass of the back door. Agent McFadden stated that these prints were bare-shouldered prints left by either someone wearing a sleeveless shirt or no shirt. He measured the height of the prints at fifty-nine and a half inches from the bottom of the door to the top of the prints. He believed that the person who made the prints had to have been over five feet, eleven inches tall.

-6-

Another TBI agent, Linda Lee Littlejohn, testified on behalf of the State. Agent Littlejohn specializes in fiber analysis and shoe prints. She compared debris collected from the defendant's clothing to the carpet samples collected by Agent Evans. She concluded that the debris and sample could have come from the same source. Five fibers in both the debris and the samples were consistent both physically and optically. The sample from the victim's house was orange shag carpet. The fibers found on defendant's shirt were orange.

Two of the defendant's acquaintances, Heather Dutra and Chris Dawson, testified as to the events of August 17 and 18. Neither Ms. Dutra or Mr. Dawson had known the defendant for more than a month at the time of the incident. The afternoon of August 17, the defendant arrived at the house where Ms. Dutra was living with several others. The defendant, Ms. Dutra and a few others rode around Cookeville looking for a place to purchase some crack cocaine. The group drove around and smoked crack cocaine until about 5:00 p.m. When the money ran out, they then went back to the house and soon ran out of crack cocaine. Ms. Dutra and Mr. Dawson drove the defendant to John's Place and dropped him off around 8:30 p.m. The defendant told them he wanted to get more money when they dropped him off. They were to pick him up in an hour or an hour and a half behind John's Place. They returned two hours later, but did not find the defendant. Shortly thereafter, they went back to the house. Around 2:00 a.m., Mr. Dawson woke Ms. Dutra up and asked to use her car. Ms. Dutra, Mr. Dawson and the defendant left to go buy more crack cocaine. The defendant had on a black tank top with no sleeves. Ms. Dutra and Mr. Dawson went with the defendant when he bought the drugs. They both saw him pull money and a ring out of his pocket. Both Ms. Dutra and Mr. Dawson described the ring as a gold band with a marquis-shaped diamond. Mr. Dawson testified that they needed $40 to purchase the crack cocaine, but the defendant only had $20. A woman who also wanted some crack cocaine came in with $20. The defendant and the woman then pooled their money to buy $40 worth of crack cocaine. They then smoked the crack cocaine.

In this case, there was no direct evidence. All of the evidence was circumstantial. Circumstantial evidence on its own, may be sufficient to support a conviction. In State v. Richmond, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999), we stated:

> [T]he circumstantial evidence "'must be not only consistent with the guilt of the accused but it must also be inconsistent with his [or her] innocence and must exclude every other reasonable theory or hypothesis except that of guilt.'" State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987) (quoting Pruitt v. State, 3 Tenn. Crim. App. 256, 267, 460 S.W.2d 385, 390 (1970)). In this way, "'it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime.'" Id. at 896 (quoting Pruitt, 3 Tenn. Crim. App. at 267, 460 S.W.2d at 390). While following these guidelines, we must note that the jury decides the weight to be given to circumstantial evidence and that "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions

primarily for the jury." Marable v. State, 203 Tenn. 440, 452 313 S.W.2d 451, 457 (1958).

State v. Richmond, 7 S.W.3d at 91.

The evidence presented at trial amply establishes the guilt of the defendant beyond a reasonable doubt. The defendant's acquaintances left him at John's Place, which is a mere 800 feet from the victim's house, at 8:30 p.m. on August 17. They were scheduled to pick him up an hour to an hour and a half later. This would be at 9:30 p.m. or 10:00 p.m. They arrived two hours later, which would be 10:30 and did not find the defendant at John's Place. The estimated time of death for the victim was 11:00 p.m. Footprints from the defendant's shoes were found both outside and inside the victim's house. In addition, fibers found on the defendant's clothes were consistent with fibers from the victim's carpet. Clearly, the evidence shows that the defendant was in the victim's house. The defendant had on a sleeveless shirt on August 17 and two shoulder prints were found on the backdoor of the victim's house. When the defendant rejoined his friends, he had a ring with a marquis-shaped diamond and around $20.00, the same amount of money kept by the victim in her small wallet. The evidence is inconsistent with the defendant's innocence and can lead to no other conclusion but the defendant's guilt of felony murder, second degree murder, especially aggravated robbery and especially aggravated burglary.

Therefore, this issue is without merit.

## **Sentencing**

The defendant also challenges the Tennessee sentencing scheme as unconstitutional. He makes two arguments. He first argues that the sentencing scheme is unconstitutional because the applicable aggravating circumstances, which are contained in Tennessee Code Annotated section 39-13-204, are not part of the indictment. He then argues that the sentencing scheme is unconstitutional because the jury was given no basis upon which to weigh the aggravating circumstances and the mitigating factors and must rely upon their conscience to guide them. He relies on Ring v. Arizona, 535 U.S. 584 (2002) to support both of these arguments.

In Ring, the Supreme Court held that Arizona's capital sentencing scheme was unconstitutional because a judge, sitting without a jury, was required "to find aggravating circumstances necessary for imposition of the death penalty." Id. at 609. The Supreme Court based this decision on its prior decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). In its application of Apprendi in Ring, the Supreme Court found that the application of the aggravating circumstances to capital sentencing in Arizona were the functional equivalent of an element of a greater offense. Id.

Our supreme court stated in State v. Dellinger, 79 S.W.3d 458 (Tenn. 2002), that Apprendi does not apply to the Tennessee capital sentencing scheme. 79 S.W.3d at 466-67. This Court has

stated on more than one occasion that <u>Ring</u> does not affect the supreme court's decision. <u>See</u> e.g., <u>State v. Robert Faulkner</u>, No. W2001-02614-CCA-R3-DD, 2003 WL 22220341, at *29 (Tenn. Crim. App. at Jackson, Sept. 26, 2003); <u>State v. Gdongalay P. Berry</u>, No. M2001-02023-CCA-R3-DD, 2003 WL 1855099, at *5 (Tenn. Crim. App. at Nashville, Apr. 10, 2003); <u>State v. Richard Odom</u>, No. W2000-02301-CCA-R3-DD, 2002 WL 31322532, at *13 n.1 (Tenn. Crim. App. at Jackson, Oct. 15, 2002). These cases from our Court rely on Footnote 6 from the Ring opinion which states, "[o]f the 38 States with capital punishment, 29 generally commit sentencing decisions to juries. See . . . Tenn. Code Ann. § 39-13-204." <u>Ring</u>, 536 U.S. at 608, n.6. As we have previously stated, because sentencing decisions in capital cases are submitted to the jury instead of decided by a trial judge the Supreme Court's decision in <u>Ring</u> does not affect the Tennessee Supreme Court's holding in <u>Dellinger</u>. <u>Robert Faulkner</u>, 2003 WL 22220341 at *29; <u>Gdongalay P. Berry</u>, 2003 WL 1855099 at *5; <u>Richard Odom</u>, 2002 WL 31322532 at *13 n.1.

In <u>Dellinger</u>, our supreme court held that principles announced in <u>Apprendi</u> do not apply to our capital sentencing scheme. 79 S.W.3d at 467. The supreme court stated the following reasons why <u>Apprendi</u> does not apply to the Tennessee capital sentencing scheme:

1.    The specific aggravating factor used to impose the death penalty in this case was a prior conviction. The <u>Apprendi</u> holding applies to enhancement factors other than prior convictions. [<u>Apprendi,</u> 530 U.S.]at 476, 120 S. Ct. 2348. The aggravator relied upon by the State here is therefore specifically excluded under <u>Apprendi</u>.

2.    The death penalty is within the statutory range of punishment prescribed by the legislature for first degree murder. Tenn. Code Ann. § 39-13-202(c)(1). The <u>Apprendi</u> holding applies only to enhancement factors used to impose a sentence above the statutory maximum. <u>Apprendi,</u> 530 U.S. at 481, 120 S.Ct. 2348. It is on this basis that the Court in <u>Apprendi</u> addressed and rejected the concern that the principles governing its decision would invalidate state capital sentencing procedures requiring judges to find aggravating factors before imposing the death penalty. <u>Id.</u> at 496-97, 120 S.Ct. 2348. The Court noted that such a sentencing procedure does not allow a judge to determine the existence of a factor making the crime a capital offense. <u>Id.</u> at 497, 120 S.Ct. 2348. Instead, the judge is called upon to decide whether the death penalty, the maximum penalty allowable under the capital statute, should be imposed. <u>Id.</u>

3.    District attorneys in Tennessee are required to notify capital defendants no less than thirty days before trial of the intent to seek the death penalty and must specify the aggravating circumstances upon which the State intends to rely during sentencing. Tenn. R. Crim. P. 12.3(b). Rule 12.3(b) therefore satisfies the requirements of due process and notice. <u>See</u> <u>State v. Golphin,</u> 352 N.C. 364, 395-97, 533 S.E.2d 168 (2000) (statute setting forth the aggravating circumstances the jury may consider provides sufficient notice to satisfy the constitutional requirements of due process).

4.    Tennessee's capital sentencing procedure requires that a jury make findings regarding the statutory aggravating circumstances. Tenn. Code Ann. § 39-13-

204(f)(1), (I). The <u>Apprendi</u> holding applies only to sentencing procedures under which judges sentence the defendants. <u>Apprendi</u>, 530 U.S. at 476, 120 S. Ct. 2348.

5.    Tennessee's capital sentencing procedure requires that the jury find any statutory aggravating circumstance beyond a reasonable doubt. Tenn. Code Ann. § 39-13-204(f)(1), (I). The Tennessee statutes therefore comply with the "beyond a reasonable doubt" standard required by <u>Apprendi</u>. <u>Apprendi</u>, 530 U.S. at 476, 120 S. Ct. 2348.

<u>Dellinger</u>, 79 S.W.3d at 466-67.

## A. Aggravating Circumstances Not Part of Indictment

The defendant first argues that because the two aggravating circumstances were not part of the indictment, the defendant's sentence is contrary to the protections of the United States Constitution. The defendant argues that <u>Ring</u> states that the aggravating circumstances outweighing the mitigating circumstances should actually be considered an element of the crime of first degree murder, as opposed to part of a sentencing scheme. Therefore, according to the defendant, the aggravating circumstances are required to be decided by a jury beyond a reasonable doubt.

The aggravating circumstances used in the defendant's case were: (1) The defendant was previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to a person; and (2) the victim of the murder was seventy (70) years of age or older. Clearly, the aggravating circumstance of a prior conviction is not included in <u>Apprendi</u>, as stated by our supreme court in <u>Dellinger</u>. <u>Id.</u> at 466. Therefore, the defendant's argument with regard to this aggravating circumstance is baseless.

The defendant's argument with regard to the second aggravating circumstance is likewise meritless. All the reasons set out in <u>Dellinger</u> for the inapplicability of <u>Apprendi</u> were met in the case <u>sub judice</u>: (1) the sentence of life without parole is within the statutory range of punishment for first degree murder; (2) the district attorney notified the defendant of his intent to seek imprisonment for life without parole; (3) the jury was required to find the statutory aggravating circumstances to determine punishment; and (4) there was no question that the jury found that the victim was over the age of seventy (70), because her death certificate was entered into evidence that listed her age as eighty-seven (87) and her birthdate as April 8, 1912. <u>See</u> <u>Dellinger</u>, 79 S.W.3d at 466-67.

Because we find that <u>Apprendi</u> and <u>Ring</u> do not apply to the Tennessee statutory sentencing scheme and to the sentencing in the case in particular, we find that the defendant's issue is without merit.

## B. Weighing of Aggravating and Mitigating circumstances

As his final issue, the defendant argues that the jury was unable to determine the relative weight of the aggravating and mitigating circumstances beyond a reasonable doubt because the jury was not given a means of measuring these factors.

Under Tennessee Code Annotated sections 39-13-204(f)(1) and (2), and (i), the state legislature requires a jury to make specific findings regarding the statutory aggravating circumstances. After the jury found the defendant guilty, the trial court moved onto the sentencing phase for the first degree murder conviction. For the sentencing phase, the trial court instructed the jury, "you are authorized to weigh and consider any of the statutory aggravating circumstances proved beyond a reasonable doubt and any mitigating circumstances which may have been raised by the evidence throughout the entire course of this trial, including the guilt finding phase or sentencing phase or both." This is a proper instruction under Tennessee Code Annotated section 39-13-204(f)(1) and (2) and (i), which require the jury to find any statutory aggravating circumstance beyond a reasonable doubt. As we have stated above, the Tennessee sentencing scheme is constitutional under both Apprendi and Ring. In Dellinger, our supreme court stated that his statute's requirement is one of the reasons our capital sentencing scheme does not fall under Apprendi. Dellinger, 79 S.W.3d at 467. Therefore, this issue is without merit.

## Conclusion

Based on the foregoing, the judgments of the trial court are AFFIRMED.

_____
JERRY L. SMITH

-11-