# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 2, 2010

## STATE OF TENNESSEE v. THOMAS MILTON CARVER, III

**Direct Appeal from the Circuit Court for Madison County**
**No. 08-725      Roger A. Page, Judge**

---

**No. W2009-02315-CCA-R3-CD  - Filed January 24, 2011**

---

The defendant, Thomas Milton Carver, III, was convicted by a Madison County jury of aggravated assault, a Class C felony, and sentenced as a Range II, multiple offender to ten years in the Department of Correction.  On appeal, he raises two issues for our review: (1) whether the trial court erred in charging the jury with a flight instruction; and (2) whether the trial court erred by sentencing the defendant as a Range II offender.  Following review of the record, we conclude no error exists and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

George Morton Googe, District Public Defender, and Paul E. Meyers, Assistant Public Defender, for the appellant, Thomas Milton Carver, III.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Benjamin C. Mayo, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The sixteen-year-old victim, the defendant's stepson, walked to their Jackson home at approximately 8:30 p.m. on August 7, 2008, following a day of school and work at Pizza Hut.  When he arrived, the victim sat down at the table to eat his supper.  The defendant, who was visibly intoxicated, approached the victim and began a discussion regarding a cell phone belonging to the victim's sister.  An argument ensued, with the victim twice telling the

defendant to leave him alone. Eventually, when the defendant "got in [the victim's] face" again, the victim pushed the defendant, who staggered backwards, fell over the table bench, and knocked over a lamp. At this point, a physical altercation ensued, ending with the defendant holding down the victim and choking him. The victim's mother, Leanna Carver, intervened and stopped the fight by pulling the defendant off her son. She then instructed the victim to go upstairs to his room, which he did.

While in his room, the victim heard the defendant continue to yell at his mother. When he heard his mother say, "don't you touch me," the victim, worried for his mother's safety, came out of his room onto the landing. The defendant stormed up the stairs and again began yelling at the victim, who was holding a ball bat at his side. The defendant eventually returned downstairs. At some point, when he observed that the defendant was in possession of a knife, the victim retrieved a machete and laid it on the banister at the top of the stairwell. The victim never threatened the defendant with either the bat or the machete. When the victim believed that the danger had subsided, he put up both the bat and machete. Later that night, the yelling and arguing between the defendant and the victim's mother resumed. At one point, the victim came out of his room onto the landing, and he observed the defendant holding the knife. The defendant threw the sheath for the knife at the victim, but the victim was not hit. Shortly thereafter, the defendant, who was standing at the bottom of the stairwell, threw the knife up at the victim, who was standing at the top of the stairs on the landing. The knife entered the victim's face and lodged below his left eye.

After being hit with the knife, the victim came down the stairs, and his mother phoned the police. At this point, the defendant had left the home but subsequently returned while the victim was in the laundry room. To avoid another attack, the victim kicked the defendant. Hearing the scuffle, the victim's mother assisted in getting the defendant away from the victim. The defendant then grabbed some personal items from the kitchen counter and ran out the back door.

When police responded to the scene, they discovered the victim, his mother, and his sister sitting on the front porch of the home. The victim had a knife sticking out of the side of his face, and his mother was holding a towel to his face. The victim was taken by ambulance to a local hospital but eventually had to be airlifted to Memphis. After the victim and his mother explained what had occurred, a BOLO was issued for the defendant. Despite searching the surrounding area for several hours, police were unable to locate the defendant. He was subsequently apprehended, hiding in the crawl space of the family home.

Based upon these actions, the defendant was indicted by a Madison County grand jury for attempted first degree murder and two counts of aggravated assault. Following a jury trial, he was convicted of the lesser offense of reckless endangerment and one count of

aggravated assault, with the State entering a *nolle prosequi* on the remaining count. Thereafter, the trial court merged the two remaining offenses and sentenced the defendant as a Range II, multiple offender to ten years in the Department of Correction. Following the denial of his motion for new trial, the defendant timely appealed.

## Analysis

On appeal, the defendant has raised two issues for our review. First, he contends that the trial court erred by charging the jury with a flight instruction. Next, he asserts that the court erred in sentencing him as a Range II, multiple offender.

## I. Flight Instruction

Initially, the defendant contends that the trial court erred in submitting a flight instruction to the jury. Specifically, he contends that there was no evidence presented which supported an inference that he fled the scene and, as a result, a flight instruction was not warranted by the proof. He further asserts that the instruction given to the jury caused substantial harm to his ability to present a defense.

A defendant has a "constitutional right to a correct and complete charge of the law." *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). The trial court has the duty to give "a complete charge of the law applicable to the facts of the case." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998). An appellate court reviewing challenged jury instructions must look at "the charge as a whole in determining whether prejudicial error has been committed." *State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicially erroneous "if it fails to fairly submit the legal issues or if it misleads the jury as to applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). Unless the error is harmless beyond a reasonable doubt, erroneous jury instructions require reversal. *Welch v. State*, 836 S.W.2d 586, 591 (Tenn. Crim. App. 1992).

A flight instruction is warranted when "proof of both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown" has been presented at trial. *State v. Burns*, 979 S.W.2d 276, 289-90 (Tenn. 1998). The State may satisfy the subsequent hiding out, evasion, or concealment requirement by introducing evidence from which a jury might infer such action. *State v. Terrance Wilks*, No. W1999-00279-CCA-R3-CD (Tenn. Crim. App. at Jackson, Nov. 22, 1999).

In this case, the trial court found sufficient evidence to warrant the instruction and, thereafter, instructed the jury using a standard flight instruction which is contained in the

Tennessee Pattern Jury Instructions. The defendant is not asserting that the court gave an improper instruction; rather, he asserts only that the instruction was not warranted. He contends that the only possible evidence in the record of "leaving the scene" came from statements made by the victim and his mother, namely that the defendant left after grabbing some personal items and that the victim's mother told the defendant to go away. He asserts that neither statement supports the inference that the defendant fled the scene. We disagree.

Our review of the record shows that it was sufficiently established that the defendant left the scene of the difficulty. The victim testified that the defendant fled the home after again attempting to attack him and grabbed personal items prior to his departure. When law enforcement officers arrived at the scene, the defendant was not present, and the victim's mother told officers that the defendant ran from the house. Although not argued by the defendant, we also conclude that there is ample evidence of the evasion requirement. A BOLO was issued for the defendant and, despite searching all night, police were unable to locate him. He was eventually found in the crawl space of the family home. We conclude that no error exists in the trial court's decision to charge the jury with a flight instruction.

## II. Sentencing as a Multiple Offender

Next, the defendant contends that the trial court committed error by sentencing him as a Range II, multiple offender. When a criminal defendant challenges the length, range, or manner of service of a sentence, the appellate court must conduct a *de novo* review of the record with a presumption that the sentencing determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). If the sentencing court did not do so, then the presumption fails, and this court's review is *de novo* with no presumption of correctness. *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004). The party challenging the sentence imposed by the trial court bears the burden of showing that the sentence is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts.

Our sentencing act defines a "multiple offender" as a defendant who has received "a minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes. . . ." T.C.A. § 40-35-106(a)(1) (2006). It is not disputed in this case that the defendant stands convicted of a Class C felony. Nor is it disputed that the trial court found the defendant to be a multiple offender, based upon two prior Class D felony convictions, namely two reckless aggravated assaults. Further, it is not disputed that the two crimes underlying these convictions were committed within twenty-four hours of each other on August 9, 2000. The State responds that although

the two prior convictions were committed within the same day, the twenty-four-hour rule is not applicable based upon the language of Tennessee Code Annotated section 40-35-106(b)(4), which states that:

> [i]n determining the number of prior convictions a defendant has received: . . . [e]xcept for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims, . . . convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions.

We agree with the State. Although the two crimes did occur within a twenty-four-hour period, each of the prior convictions at issue involved reckless aggravated assault, a crime which clearly includes bodily injury as an element. As such, the twenty-four-hour rule is not applicable, and the trial court did not err in concluding that the defendant qualified as a Range II, multiple offender.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE