Bill R. **DIXON**, Jr., Appellant,

v.

**STATE** of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee, at Jackson.

March 20, 1996.

George Morton Googe, District Public Defender, Pamela J. Drewery, Assistant Public Defender, Jackson, for Appellant.

Charles W. Burson, Attorney General and Reporter, William David Bridgers, Assistant Attorney General, Nashville, Jerry Woodall, District Attorney General, Donald Allen, Assistant District Attorney General, Jackson, for Appellee.

## *OPINION*

WELLES, Judge.

The Petitioner, Bill Dixon, brings this appeal after the trial court's dismissal of his petition for post-conviction relief. The Petitioner sought post-conviction relief alleging that his guilty plea was not entered voluntarily, understandingly, and knowingly, and further alleging that he received ineffective assistance of counsel preceding, during, and after the entry of his guilty plea. After conducting an evidentiary hearing, the trial court denied relief. We affirm the judgment of the trial court in part and reverse in part with respect to the sentence imposed on the Petitioner.

On September 15, 1992, the Petitioner was arraigned on a two-count indictment for first degree murder and the unlawful possession of a deadly weapon with the intent to employ

it in the commission of a felony. He entered a guilty plea in both counts and was sentenced to twenty-five years incarceration as a Range I standard offender for the reduced charge of second degree murder. He was also ordered to serve a consecutive sentence of five years incarceration for the second count of the indictment. On this charge, the Petitioner was sentenced as a Range III offender, but the sentence was ordered to be served at the Range I release eligibility rate of thirty percent.

On March 23, 1994, the Petitioner filed a petition for post-conviction relief in the Madison County Circuit Court. After an evidentiary hearing on November 22, 1994, the trial court denied relief and dismissed the petition. It is from this order that the Petitioner appeals.

■ We will address the Petitioner's contention that his guilty pleas were not entered into voluntarily, understandingly, and knowingly. Specifically, he argues that had he been informed on the law, he would not have pleaded to such an excessive and illegal sentence; therefore, his uninformed plea cannot be deemed voluntary.

In *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court held that the record must show that a guilty plea was made voluntarily, understandingly and knowingly. In *Boykin,* the Supreme Court held that the entry of a guilty plea effectively constituted a waiver of the constitutional rights against compulsory self-incrimination, the right to confront one's accusers, and the right to trial by jury. *Id.* at 243, 89 S.Ct. at 1712. If a guilty plea is not voluntary and knowing, it has been entered in violation of due process and is, therefore, void.

The United States Supreme Court stated in *Boykin* that a voluntary plea cannot be found from a silent record. *Boykin,* 395 U.S. at 242, 89 S.Ct. at 1711–12. The issue on whether a guilty plea is invalid is controlled by *State v. Neal,* 810 S.W.2d 131 (Tenn.1991) and *Johnson v. State,* 834 S.W.2d 922 (Tenn. 1992), which outline the procedural and substantive requirements for the entry of a guilty plea as a valid judgment of conviction. These cases also dictate the standard of review to determine whether a conviction based upon a guilty plea is valid.

The record contains a verbatim transcript of the Petitioner's guilty plea hearing. The trial court specifically asked the Petitioner if he understood that he was pleading out of his range for the weapons charge, and whether he understood that he would still serve the Range III sentence at a Range I release eligibility date. The Petitioner answered that he understood this. When asked by the trial court if he had any further questions about his sentence or his plea, the Defendant answered that he did not.

The court then instructed the Petitioner on the rights he was giving up by entering the plea, including the right to trial and to appeal. The Petitioner told the court that he had not been coerced into accepting the plea. In concluding the guilty plea hearing, the court asked:

> THE COURT: Then I take it that you are pleading guilty because you think that is the thing for you to do all things being considered; is that correct, sir?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And because you are guilty?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you satisfied with Mr. Staton as your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you have any questions at all about anything today that we have talked about?
>
> THE DEFENDANT: No, sir.

The Petitioner's argument is refuted by his answers to the questions asked of him by the trial court during the sentencing hearing. The record establishes that the Petitioner's plea was entered into voluntarily, understandingly, and knowingly.

■ After hearing the Petitioner's testimony and arguments at the post-conviction proceeding, the trial court concluded that the Petitioner had been fully apprised of his rights at the guilty plea hearing, and the court thereby denied post-conviction relief. Again, the trial court's findings of fact are afforded the weight of a jury verdict, and this

court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. *Black v. State,* 794 S.W.2d 752, 755 (Tenn.Crim.App.1990). We conclude that the evidence does not preponderate against the trial court's findings that the Petitioner knowingly and voluntarily entered the guilty pleas to second degree murder and possession of a deadly weapon with the intent to employ it in the commission of a felony.

The Petitioner next argues that he received ineffective assistance of counsel at the plea bargaining stage because he was advised to plead to an excessive sentence for the offense of second degree murder. He also contends that his counsel was ineffective in allowing him to plead to an excessive or illegal sentence for the offense involving possession of the weapon.

The test to determine whether counsel provided effective assistance at trial is whether his performance was within the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose,* 523 S.W.2d 930 (Tenn.1975). Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), a two-prong test places the burden on the appellant to show that (1) the representation was deficient, requiring a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed a defendant by the Sixth Amendment, and (2) the deficient representation prejudiced the defense to the point of depriving the defendant of a fair trial with a reliable result. 466 U.S. at 687, 104 S.Ct. at 2064.

In *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court applied the *Strickland* two-part standard to ineffective assistance of counsel claims arising out of the plea process. The Court in *Hill* modified the "prejudice" requirement by stating that "the defendant must show that there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. at 370. Thus, to succeed on his claim, the appellant must show that there is a "reasonable probability," which is a probability sufficient to undermine confidence in the outcome, that, but for the counsel's unprofessional errors, the results of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. The burden rests on the appellant to prove his allegations by a preponderance of the evidence. *Long v. State,* 510 S.W.2d 83, 86 (Tenn.Crim.App.1974). We do not use the benefit of hindsight to second-guess trial strategy by counsel and criticize counsel's tactics. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn.1982).

The Petitioner argues that his attorney was ineffective by failing to get the second count of the indictment merged with the first count. In making this assertion, the Defendant relies on *State v. Hudson,* 562 S.W.2d 416 (Tenn.1978), and *Welch v. State,* 836 S.W.2d 586, 588 (Tenn.Crim.App.), *perm. to appeal denied, id.* (Tenn.1992). In *Hudson,* however, the Tennessee Supreme Court was faced with the question of whether, in enacting former Tennessee Code Annotated section 39–4914, the legislature intended to create a separate felony offense or whether the intent was to amend existing felony offenses to provide for enhanced punishment when those felonies were committed with a weapon. *Hudson,* 562 S.W.2d at 418. The court held that the statute did not create a separate offense, but only acted to enhance the punishment for the felony offenses if they were committed with a weapon. *Id.*

In the case *sub judice,* however, the Petitioner was convicted of second degree murder, not felony murder. Unlike the *Hudson* defendant, the Petitioner pled guilty to the offense of possession of a deadly weapon with the intent to employ it in a felony, which is statutorily set out as a distinct and separate offense. Tenn.Code Ann. § 39–17–1307(c)(1). Therefore, because merger was not appropriate in this case, the Petitioner's counsel was not ineffective in failing to get the two convictions merged.

The Petitioner next argues that counsel was ineffective for advising him to accept a plea agreement that was excessive. The Petitioner pleaded guilty to second degree

murder which had a range of fifteen to twenty-five years. He contends that because no enhancement factors were found applicable, the maximum sentence of twenty-five years was erroneously imposed on him; only the minimum sentence of fifteen years could be justified by the facts.

In *State v. Mahler,* 735 S.W.2d 226 (Tenn. 1987), the Tennessee Supreme Court held that parties could legitimately agree to a sentence within a range of punishment provided by law even if the facts would call for a different range. Likewise, the parties can agree to the term of the sentence, even though a defendant might have been sentenced to less time if there had been no plea agreement. Here, the Petitioner was originally charged with first degree murder which carried a maximum term of life imprisonment. The Petitioner agreed to be convicted of the lesser offense of second degree murder and to receive a sentence of twenty-five years. The sentence of twenty-five years incarceration was clearly within the statutory limits fixed for the offense of murder in the second degree.

The Petitioner's attorney testified that he fully discussed with the Petitioner the plea agreement and the consequences of pleading guilty. The Petitioner had admitted to the police and to his attorney that he had killed the victim. The co-defendant in the case would testify at trial that when he asked the Petitioner why he had shot the victim, the Petitioner replied, "I just felt like it was the right thing to do. I just wanted to see what it was like to kill somebody." The Petitioner's counsel testified that the Petitioner wanted to make a plea agreement so that he would not have to plead guilty to first degree murder. Subsequently, the Petitioner decided to accept the plea agreement which required the service of twenty-five years for the murder, thereby waiving any right to contest the length of the sentence.

We cannot conclude that the twenty-five year sentence was excessive, nor do we conclude that any advice given by the Petitioner's attorney to accept the sentence constituted ineffective assistance of counsel.

The Petitioner next argues that his counsel was ineffective for allowing him to accept an excessive or illegal sentence for possession of a weapon with the intent to commit a felony, a Class E felony. *See* Tenn.Code Ann. § 39-17-1307(c)(1). For this offense, the Petitioner was sentenced as a Range III offender to five years incarceration.[1] However, the sentence was ordered to be served with a Range I release eligibility after service of thirty percent of the sentence, rather than the Range III release eligibility rate of forty-five percent.

The Petitioner contends and the State concedes that the five-year sentence is illegal because the trial court lacked authority to enter a judgment sentencing the Petitioner to serve a Range III sentence with a Range I release eligibility percentage.

As previously noted, the *Mahler* opinion held that parties can legitimately agree to a sentence within a range of punishment provided by law even if the facts would call for a different range. *Mahler,* 735 S.W.2d at 228. Thus, the sentence is not illegal merely because the Petitioner pleaded to a Range III sentence when he otherwise would not have qualified for such a range.

However, "a judgment imposed by a trial court in direct contravention of express statutory provisions regarding sentencing is illegal and is subject to being set aside at any time, even if it has become final." *Mahler,* 735 S.W.2d at 228. Because the sentence imposed on the Petitioner did not comply with the statutory sentencing guidelines, the sentence is "a nullity and cannot be waived." *State v. Cutright,* Order, No. 02C01-9108-CC-00175 (Tenn., Jackson, filed Aug. 31, 1992).

The precise issue which we are facing is whether one may be legally sentenced to a term of years within one range, but with a release eligibility date determined by the percentage set forth in a separate range.

1. A Range I sentence for a Class E felony is one to two years, with eligibility for release after service of thirty percent of the sentence. Tenn. Code Ann. §§ 40-35-112(a)(5), 40-35-501(c). The sentence for a Range III offender is four to six years, with eligibility for release after service of forty-five percent of the sentence. Tenn.Code Ann. §§ 40-35-112(c)(5); 40-35-501(e).

Here, the petitioner was sentenced to a term of years authorized for a Range III offender, yet the sentence was ordered to be served at the Range I release eligibility percentage.

Although the State concedes this issue, and we believe correctly so, the issue has been a troubling one for this court. Such a sentencing structure was approved in *State v. Terry,* 755 S.W.2d 854 (Tenn.Crim.App.1988); *Terry L. Hicks v. State,* No. 02C01–9503–CC–00071, Madison County, 1996 WL 39386 (Tenn.Crim.App., Jackson, filed Jan. 31, 1996); *Darnell Gentry v. State,* No. 02C01–9304–CC–00052, Gibson County, 1994 WL 284115 (Tenn.Crim.App., Jackson, filed June 29, 1994). Such a sentencing structure was determined to be an illegal sentence in *George Cheairs v. State,* No. 02C01–9304–CC–00070, Fayette County, 1994 WL 583331 (Tenn.Crim.App., Jackson, filed Oct. 26, 1994), and *Ronald Lature McCray v. State,* No. 02C01–9412–CC–00277, Fayette County, 1995 WL 568388 (Tenn.Crim.App., Jackson, filed Sept. 27, 1995). We choose to follow the reasoning of the cases that have concluded that a sentence such as the one ordered herein is an illegal sentence and thus a nullity.

The illegal five-year sentence for the weapons charge was, from the State's perspective, inextricable from the part of the plea agreement pertaining to the second degree murder charge. We must conclude that this leaves the status of the original prosecution at the sentencing stage. The transcript of the guilty plea proceeding reflects that the State recommended the sentence imposed herein, and the trial court accepted the recommendation. Because the recommendation included a sentence which is illegal, on remand the trial court must reject the recommended sentence. At that stage, proceedings on the guilty plea shall be governed by Rule 11(e)(2) or 11(e)(4) of the Tennessee Rules of Criminal Procedure. *See State v. Hodges,* 815 S.W.2d 151 (Tenn.1991).

Not withstanding our holding as to the illegality of the sentence, we will now address the Petitioner's remaining issues to expedite any further appellate review. The Petitioner argues that he received ineffective assistance of counsel during the pre-trial and appellate stages of his convictions because: (1) Counsel failed to appeal the guilty plea or sentence; (2) counsel failed to interview witness Cindy Wade; (3) counsel failed to review transcripts of Petitioner's preliminary hearing; and (4) counsel did not file a motion to suppress the Petitioner's confession.

The Petitioner's former attorney testified that he interviewed several potential witnesses for the case, including police officers. Although the Petitioner said that Cindy Wade would have placed the Petitioner at her home during the time of the killing, the attorney had never heard of this witness. Additionally, the Petitioner had confessed that he committed the killing to the police and to counsel. The attorney testified that he reviewed the case thoroughly, had frequent contact with the Petitioner during the preparation of the case, and was preparing to go to trial on a theory of self-defense. He also testified that he fully discussed the issues with the petitioner including potential witness testimony and evidence.

After the post-conviction evidentiary hearing, the trial court found that the allegations of ineffective assistance of counsel were vague, uncertain, and general. After hearing the testimony of the Petitioner and his former counsel, the court concluded that the Petitioner had been fully apprised of his rights by the court and his attorney and also concluded that the Petitioner's attorney adequately represented him. The record supports the findings of the trial court.

The burden rests on the appellant to prove his allegations by a preponderance of the evidence. *Long v. State,* 510 S.W.2d 83, 86 (Tenn.Crim.App.1974). The Petitioner has not shown that counsel made errors so serious that he was not functioning as counsel as guaranteed by the Sixth Amendment. The Petitioner makes the allegations without showing or explaining how these alleged errors of counsel prejudiced him in any way.

We conclude that the Petitioner has failed to carry his burden of showing that either prong of the *Strickland* test has been met. Because the trial court's findings of fact are afforded the weight of a jury verdict, this court is bound by those findings unless the

evidence contained in the record preponderates against them. *Black v. State,* 794 S.W.2d 752, 755 (Tenn.Crim.App.1990). Here, they do not. This issue has no merit.

The judgment of the trial court is reversed in part and affirmed in part, and this case is remanded to the trial court for further proceedings consistent with this opinion.

WADE, J., concurs.

PEAY, J., concurs with opinion.

PEAY, Judge, concurring.

I agree with the majority's conclusion that the petitioner's sentence is illegal and, based on prior decisions of our Supreme Court, must be set aside. I write separately, however, to emphasize a policy concern which I believe has been overlooked in the debate regarding whether a sentence in which the term of imprisonment does not correspond to the range imposed must be set aside.

The majority correctly frames the precise issue which confronts us, namely, whether a defendant may be legally sentenced to a term of imprisonment which, although it falls within the entire range of authorized imprisonment for the particular felony class, does not correspond to the specific range imposed. As the majority points out, this Court has had considerable trouble with this issue. In fact, this Court has approved of some sentences in which the term of imprisonment did not correspond to the range imposed,[1] but has disapproved of other indistinguishable sentences.[2]

The Tennessee Supreme Court, on the other hand, has been somewhat more consistent with its treatment of this issue. Perhaps the most often cited case is *State v. Mahler,* 735 S.W.2d 226 (Tenn.1987). In *Mahler,* the defendant pled guilty to second-degree murder with an agreed sentence of fifty years at Range II. *Mahler,* 735 S.W.2d at 227. Upon review, however, it appeared from the record that the defendant did not qualify as a Range II offender. *Mahler,* 735 S.W.2d at 227. In affirming the sentence the Court stated that the defendant's guilty plea waived any complaint regarding his range classification. Our Supreme Court held that because the term of imprisonment was "within *statutory limits fixed for the offense* of murder in the second degree," the sentence was not illegal. *Mahler,* 735 S.W.2d at 228 (emphasis added). The Court's language appears to focus the inquiry on whether the term of imprisonment is within the entire range of punishment for the offense, not on whether the term of imprisonment and the range imposed correspond to each other. It is important to note, however, that the defendant's fifty year term of imprisonment was not only within the statutory limit fixed for the offense, but also within the appropriate punishment for a Range II offender.

Our Supreme Court revisited this issue, albeit in a different procedural posture, three years later in *State v. Russell,* 800 S.W.2d 169 (Tenn.1990). In *Russell,* the defendant was convicted of aggravated rape (sexual penetration of a child under thirteen years of age), incest, and crime against nature. The age of the victim was alleged in the first count but not in the second or the third count. The trial court sentenced the defendant as a Range I offender to twenty years on each count, with all counts concurrent. *Russell,* 800 S.W.2d at 169. The twenty year sentence was within Range I for aggravated rape, within Range II for incest, and in excess of the maximum statutory punishment for crime against nature. *Russell,* 800 S.W.2d at 169–170. On appeal, the State conceded that the twenty year sentence for crime against nature was illegal. Yet the State also argued that because these offenses

1. Examples of cases approving such a sentencing structure are *State v. Terry,* 755 S.W.2d 854 (Tenn.Crim.App.1988); *Terry L. Hicks, Jr., v. State,* No. 02C01–9503–CC–00071, Madison County, 1996 WL 39386 (Tenn.Crim.App. filed January 31, 1996, at Jackson); *Darnell Gentry v. State,* No. 02C01–9304–CC–00052, Gibson County, 1994 WL 284115 (Tenn.Crim.App. filed June 29, 1994, at Jackson).

2. Examples of cases disapproving such a sentencing structure are *Ronald Lature McCray v. State,* No. 02C01–9412–CC–00277, Fayette County, 1995 WL 568388 (Tenn.Crim.App. filed September 27, 1995, at Jackson), and *George Cheairs v. State,* No. 02C01–9304–CC–00070, Fayette County, 1994 WL 583331 (Tenn.Crim.App. filed October 26, 1994, at Jackson).

were especially aggravated, statutory sentencing guidelines required that Range II sentencing be imposed. *Russell,* 800 S.W.2d at 170. The Court held that the State's failure to file notice of intent to seek Range II sentencing effectively waived Range II sentencing on both the incest count and the crime against nature count. With respect to the aggravated rape, however, the Court held that notice of Range II sentencing was given in the indictment itself because that count alleged the age of the child. *Russell,* 800 S.W.2d at 172. Based on the Court's holding, the defendant's sentences for both the incest count and the crime against nature count were modified to five years each at Range I. *Russell,* 800 S.W.2d at 170. The case was remanded to the trial court for the imposition of a Range II sentence on aggravated rape. *Russell,* 800 S.W.2d at 174. Based on the sentence modification for the incest conviction, it appears that *Russell* requires the term of imprisonment and the range imposed to correspond to each other.

Confusion arises within *Russell,* however, from the following explanation of the holding in *Mahler:*

In another context, this Court has recognized that Ranges I and II do not have the same force as the punishment limits set by the penal statutes. In *State v. Mahler,* 735 S.W.2d 226 (Tenn.1987), it was held that a defendant can waive "Range I" sentencing in a negotiated plea, and the resulting sentence is not illegal or void so long as it is within the outer limits of the penal statutes.

*Russell,* 800 S.W.2d at 172. This language appears to indicate, perhaps contrary to the holding in *Russell,* that a sentence's range classification and its term of imprisonment do not have to correspond to each other. Yet in keeping with the holding in *Russell,* it could be argued that the application of this language is restricted to negotiated pleas, as was the case in *Mahler.*

Thus, the teaching of *Mahler* and *Russell* appears to be, notwithstanding some language seemingly at odds with the holdings, that a sentence's term of imprisonment and range must correspond to each other.

Applying the above considerations to the present case, I am forced to agree with the majority that the defendant's Range I five year sentence for unlawful possession of a deadly weapon, which actually falls within the punishment limits of Range III, is illegal and must be set aside. On remand, as the majority indicates, proceedings on the guilty plea shall be governed by Rule 11(e)(2) or Rule 11(e)(4) of the Tennessee Rules of Criminal Procedure. I concur with the majority's disposition of the case before us.

Yet, I do wish to voice a concern over the implications of this holding, so that its application might be tempered by reason. In the present case, the petitioner was indicted relatively recently, on September 15, 1992. If, upon remand, the petitioner were to withdraw his guilty pleas and force the State to proceed to trial, witnesses' memories would hopefully still be fresh and evidence would still be available.

Should the case arise, however, in which a considerable period of time has passed since a negotiated plea agreement, I believe that the State's legitimate interest in finality might outweigh a petitioner's interest in setting aside his or her illegal sentence arrived at through a knowing, intelligent, and voluntary guilty plea. In such a case, there exists the distinct possibility that witnesses' memories will have faded to such a degree as to make proceeding to trial virtually impossible. Moreover, witnesses and evidence simply may not be available. In fact, evidence may have even been destroyed in accordance with law enforcement procedures. Under such circumstances, a petitioner's interest in setting aside a negotiated sentence, which more than likely the petitioner accepted because it was beneficial to him or her, is minimal when compared with the State's interests in preventing stale litigation and excessive costs.

Having expressed my concerns regarding the somewhat confusing case law on this issue, and the potentially broad application of the holding in the present case, I concur with the majority in all other respects.