IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 2000 Session

## WILLIAM BOYD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 68808      Richard R. Baumgartner, Judge**

---

**No. E1999-02179-CCA-R3-PC**
**November 6, 2000**

---

The petitioner, William Boyd, appeals from the trial court's denial of his petition for post-conviction relief. Boyd alleges that his eight-year sentence for the offense of especially aggravated sexual exploitation of a minor, which is to be served at 100 percent, is illegal. We agree that the sentence is illegal and therefore reverse the trial court's dismissal of the post-conviction petition, vacate the conviction of especially aggravated sexual exploitation of a minor and the dismissal of the charge of aggravated rape, and remand to the trial court for further proceedings.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed, Conviction Vacated and Remanded.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, William Boyd.

Paul G. Summers, Attorney General & Reporter, Clinton J. Morgan, Nashville, Tennessee, Randall E. Nichols, District Attorney General, Leland Price, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner, William Boyd, appeals from the Knox County Criminal Court's dismissal of his petition for post-conviction relief. Originally charged with one count of aggravated rape and one count of especially aggravated sexual exploitation of a minor, Boyd accepted a plea agreement whereby the aggravated rape count was dismissed; he pleaded guilty to especially aggravated sexual exploitation of a minor, and he accepted a sentence of eight years to be served at 100 percent. He now claims that the sentence is illegal because especially aggravated sexual exploitation of a minor is not one of the offenses enumerated in Code sections 40-35-501(i) or 39-13-523 for which 100 percent service is required. Boyd seeks modification of his eight-year sentence

to 30 percent service before parole eligibility. While we agree that the sentence imposed is illegal, we disagree that the remedy is sentence modification. Accordingly, we reverse the trial court's dismissal of the post-conviction petition, vacate the conviction of especially aggravated sexual exploitation of a minor, vacate the dismissal of the aggravated rape charge, and remand to the trial court with instructions to reject the illegal plea agreement and for disposition of the charges via a new plea agreement or a trial on the merits.

The petitioner was charged with aggravated rape, a Class A felony[1] which carries an authorized term of imprisonment from fifteen to 60 years[2] and a mandatory service rate of 100 percent,[3] and with especially aggravated sexual exploitation of a minor, a Class B felony[4] which carries an authorized term of imprisonment from eight to 30 years[5] and a potential service rate before parole eligibility ranging from twenty to 60 percent.[6] He entered into a plea agreement whereby the aggravated rape charge was dropped; he pleaded guilty to especially aggravated sexual exploitation of a minor, and he accepted a sentence of eight years at 100 percent service. The trial court accepted the plea and entered judgment.

Sometime thereafter, the petitioner became disenchanted with his bargain with the state and filed this post-conviction action alleging various claims related to the 100 percent service portion of his sentence. Counsel was appointed, and the matter was considered by the trial court. That court found that the petitioner's sentence was not illegal in that he waived any objection to the 100 percent service requirement of his sentence by entry of his knowing and voluntary guilty plea. The trial court further found that he had received the effective assistance of counsel in the plea process. On appeal, the petitioner raises only the issue of the legality of his sentence.

We must initially consider whether this court may review the trial court's dismissal of the post-conviction petition. Tennessee Code Annotated section 40-30-203 authorizes post-conviction proceedings only for the purpose of redressing a constitutional deprivation. Tenn. Code Ann. § 40-30-203 (1997) ("[r]elief . . . shall be granted when the conviction or sentence is void or voidable because of the abridgment of [a constitutional right]"). The petitioner's claim that the trial court lacked statutory subject matter jurisdiction to impose the current sentence is not *per se* a constitutional claim. However, we believe the petition as filed alleged a justiciable, constitutional issue, the ineffective assistance of trial counsel. See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). Furthermore, we acknowledge that our supreme court has said that an illegal

---

[1]Tenn. Code Ann. § 39-13-502(b) (1997).

[2]Tenn. Code Ann. § 40-35-111(b)(1) (1997).

[3]Tenn. Code Ann. § 40-35-501(i) (Supp. 1999).

[4]Tenn. Code Ann. § 39-17-1105 (1997).

[5]Tenn. Code Ann. § 40-35-111(b)(2) (1997).

[6]Tenn. Code Ann. § 40-35-501(b)-(f) (Supp. 1999).

sentence may be corrected "at any time, even if it has become final." State v. Mahler, 735 S.W.2d 226, 228 (Tenn. 1987). Assuming that "any time" refers to any time when the defendant is properly before the court which is empowered to hear his complaint, the petitioner was properly before the post-conviction court with his complaint regarding the effective assistance of counsel. See Hicks v. State, 945 S.W.2d 706, 706 n.2 (Tenn. 1997) (supreme court reviews post-conviction attack on "illegal" sentence but comments that the post-conviction petition alleged "counsel was ineffective because counsel allowed Hicks to receive an 'illegal' sentence"). We are uncertain of our supreme court's rationale in entertaining a post-conviction proceeding *appeal* which challenges only the illegal sentence *per se*, but because that court has allowed such appeals, at least when the petition alleged constitutional deprivations, we shall not quibble. See id. at 706; McConnell v. State, 12 S.W.3d 795, 797 (Tenn. 2000). That said, we note in passing, however, that claims of illegal sentence are now clearly cognizable in *habeas corpus* proceedings. See Jonathan Stephenson v. Howard Carlton, — S.W.3d —,—, No. E1998-00202-SC-R11-CD, slip op. at 2-3 (Tenn., Knoxville, Sept. 21, 2000) (writ will issue when the court "lacked jurisdiction or authority to sentence a defendant," and "a sentence imposed in direct contravention of a statute . . . is void and illegal" and is subject to *habeas corpus* challenge). In the future, prisoners aggrieved of "illegal" sentences may well be advised to present their claims via the *habeas corpus* form of action.[7]

Generally, the Criminal Sentencing Reform Act of 1989 provides that the length of an offender's sentence is determined by the class of offense he has committed and his classification within various ranges, as determined by his prior criminal record. See Tenn. Code Ann. § 40-35-111 (1997) (authorized terms of imprisonment); Tenn. Code Ann. § 40-35-112 (1997) (sentence ranges); Tenn. Code Ann. § 40-35-105 to -109 (1997) (range classification of offender); Tenn. Code Ann. § 40-35-501(b) - (f) (Supp. 1999) (release eligibility calculation by percentage). Certain exceptions to this general scheme exist. One such exception is the one provided by Code section 40-35-501(i), which mandates that individuals serving sentences for enumerated offenses shall serve 100 percent of their sentences and may have no more than fifteen percent of their sentences reduced by sentence credits. Tenn Code Ann. § 40-35-501(i) (Supp. 1999). The enumerated offenses are

(A)     Murder in the first degree;
(B)     Murder in the second degree;
(C)     Especially aggravated kidnapping;
(D)     Aggravated kidnapping;
(E)     Especially aggravated robbery;
(F)     Aggravated rape;
(G)     Rape;
(H)     Aggravated sexual battery;
(I)     Rape of a child;
(J)     Aggravated arson; or

---

[7]We are aware that such claims are occasionally addressed to trial courts in the form of "motions" to correct illegal sentences. However, when the "motion" is denied, the movant has no appeal as of right. See Tenn. R. App. P. 3(b); J.D. Hickman, No. E1999-02756-CCA-R3-PC, slip op. at 4-5 (Tenn. Crim. App., Sept. 27, 2000).

(K)     Aggravated child abuse.

Id. Another of the exceptions to the general rule is found in Code section 39-13-523(b), which mandates that individuals with multiple convictions of rape of a child or multiple convictions of rape, aggravated rape, or a combination of rape and aggravated rape, shall serve 100 percent of their sentences without any reductions whatsoever. See Tenn. Code Ann. § 39-13-523(b) (Supp. 1999).

Notwithstanding the sentencing scheme of the Code, a so-called "hybrid" sentence, whereby a defendant accepts a plea agreement in which the length of incarceration is set within one range, while the release eligibility percentage is set within another range, is permissible under Tennessee law. See generally Hicks v. State, 945 S.W.2d 706 (Tenn. 1997); State v. Mahler, 735 S.W.2d 226 (Tenn.1987). For example, a defendant whose prior criminal history qualifies him for Range I sentencing might agree in exchange for reduced or dismissed charges on some counts to accept a sentence on another count with a Range II length but a Range I release eligibility percentage. See Hicks, 945 S.W.2d at 706. Likewise, a defendant who is eligible for Range I classification might agree to plead guilty to a reduced charge with a Range II sentence and release eligibility date. See Mahler, 735 S.W.2d at 226-27. So long as a defendant's acceptance of such agreement is knowing and voluntary, the courts will uphold the agreement. See Hicks, 945 S.W.2d at 709. The defendant is said to have waived any objection to the irregularity "as to offender classification [(sentencing range)] or release eligibility [percentage]" by his knowing and voluntary guilty plea. See id. In both Mahler and Hicks, the defendant pleaded guilty to sentences which were within the total prescribed sentencing limits for the offense class. See Hicks, 945 S.W.2d at 707 (commenting that, in Mahler, the sentence length was within statutory limits).

On the other hand, an illegal sentence results when the parties agree that the defendant will serve a sentence which is outside the statutorily authorized punishment for a crime. McConnell v. State, 12 S.W.3d 795, 798 (Tenn. 2000); State v. Hamlin, 655 S.W.2d 200, 201 (Tenn. Crim. App. 1983). The cases applying this rule have generally dealt with a sentence in which the number of years imposed is too great or too few in relation to the prescribed punishment under the statute. See, e.g., McConnell, 12 S.W.3d at 797, 800 (number of years greater than statute allowed for Range I offender); Hamlin, 655 S.W.2d at 201 (number of years less than statute mandated). In McConnell, a proceeding under the 1989 Sentencing Act, the high court vacated the sentence which, according to the the plea agreement, was structured under the 1982 Sentencing Act. The court held that 35-year sentences each for second degree murder and robbery with a deadly weapon were "outside the trial court's jurisdiction" because the maximum Range I sentences under the 1989 Act were 25 years and twelve years, respectively.

We find it difficult to reconcile McConnell with Hicks. McConnell's sentences did not, in fact, exceed the total range of possible sentences within the applicable offense classes. Under the 1989 Act, McConnell's conviction of second degree murder is a Class A felony and his conviction of robbery via a deadly weapon is a Class B felony. See Tenn. Code Ann. §§ 40-35-118, -111(b)(1), (2), -112(a)(1), (2) (1997). Although the maximum sentence for Range I, Class A is 25 years, the maximum sentence *for a Class A* offense is 60 years. See Tenn. Code Ann. §§ 40-35-

111(b)(1), -112(c)(1) (1997). Although the maximum sentence for Range I, Class B is twelve years, the maximum sentence *for a Class B* offense is 30 years. See Tenn. Code Ann. § 40-35-111(b)(2), -112(c)(2) (1997). McConnell's sentences, by result, would have passed muster under Hicks, which authorized plea-bargaining with respect to the "offender classification [(range)] or release eligibility." Hicks, 945 S.W.2d at 709. McConnell even recognizes that the elements of "offender classification and release eligibility" are proper issues for plea-bargaining and "still are properly characterized as non-jurisdictional." McConnell, 12 S.W.3d at 798. Nevertheless, the McConnell court did not sanction a Hicks, non-jurisdictional result. Curiously, it said that parties are not free to negotiate beyond the "other limits" imposed by the 1989 Act. Id. at 799. The court never mentioned that McConnell's sentence could have been identically structured under the 1989 Act via a "non-jurisdictional" range reclassification.[8]

The McConnell court cited Hicks with approval. Id. at 797-98. We, therefore, assume that the high court views the two cases to be in harmony. We see only one possibility for harmonizing them. That is, it is immaterial if the resulting sentence is supportable as an offender-classification/release-eligibility function when the parties expressed their agreement in extra-jurisdictional terms. Under this view, McConnell's sentence was flawed *because* the parties couched the computation as an illegal function of the 1982 Act, and Boyd's sentence would be invalid because the parties below couched their agreement in terms of Code section 40-35-501(i), which is inapplicable to especially aggravated sexual exploitation of a minor.

Frankly, this distinction we draw seems illusory, but McConnell is the later case and must be considered controlling. Boyd's acceptance of a sentence to be served at 100 percent could arguably be viewed as a waiver of *any* release eligibility date, as opposed to a joinder of especially aggravated sexual exploitation of a minor to Code section 40-35-501(i), and thereby it would be supportable as a plea bargain with respect to the non-jurisdictional matter of release eligibility. However, the parties did not articulate this approach. Under McConnell, the "no release eligibility" for the offenses enumerated in section 40-35-501(i)(2) is beyond the "outer limits within which the State and a defendant are free to negotiate." McConnell, 12 S.W.3d at 799.

At any rate, applying McConnell to invalidate the sentence in the present case is supported by the language of Code section 40-35-501. A felony sentence "to the department of correction or to a local jail or workhouse *shall* be served according to this chapter." Tenn. Code Ann. § 40-35-501(a) (1997) (emphasis added). That section then mandates that "[r]elease eligibility for each defendant sentenced as a career offender[, Range III maximum,] *shall occur after service of sixty percent (60%) of the actual sentence imposed.*" Tenn. Code Ann. § 40-35-501(f) (1997) (emphasis added). Under these statutory mandates, Boyd was not free to waive the establishment

---

[8]On the other hand, it dismissed the state's argument that the sentences could have been similarly structured under the 1989 Act by altering the use of consecutive and concurrent sentencing. Id. at 799-800. The court reasoned that consecutive sentencing using 1989 *Range I* sentences would have yielded a 37-year, as opposed to a 70-year, effective sentence.

of a release eligibility date, and the parties were not free to extend the date beyond the maximum provided by statute.

In the present case, even though the petitioner's eight-year sentence is within the eight to 30 year range for a Class B felony, see Tenn. Code Ann. § 40-35-111(b)(2) (1997), and indeed is within the eight to twelve year range for a Range I offender,[9] see Tenn. Code Ann. § 40-35-112(a)(2) (1997), the 100 percent service requirement is contrary to the general rule that sentences shall be served within a range of twenty to 60 percent before parole eligibility. See Tenn. Code Ann. § 40-35-501(b) - (f) (Supp. 1999). No provision of the Code enumerates especially aggravated sexual exploitation of a minor as an offense to which the general rule does not apply.

We therefore conclude that the petitioner's sentence is invalid, notwithstanding the plea agreement.[10]

In the wake of our holding that the petitioner's sentence is illegal, the question which arises is that of the proper remedy.[11] The defendant claims that he does not desire for his plea agreement to be set aside and advocates that we modify his sentence to 30 percent service. The state, on the other hand, argues that we should set aside the conviction and either remand to the trial court for further proceedings or remand with instructions for the court to proceed in accord with Tennessee Rule of Criminal Procedure 11(e)(4).

First, we consider the defendant's argument that we should merely modify his eight-year sentence to 30 percent service. Plea agreements are often called "plea bargains," and this term

---

[9]Although not reflected in the trial court's judgment, we discern from the written Waiver of Trial by Jury and Request for Acceptance of Plea of Guilty that the parties agreed that the defendant was a Range I offender for purposes of determining the length of sentence.

[10]In so holding, we are not unmindful that the petitioner's plea agreement disposed of a second charge against him, aggravated rape, which is an enumerated offense for which 100 percent sentence service is mandated by Code section 40-35-501(i)(2). However, the defendant's guilty plea was not to that offense or any of the other offenses to which 100 percent service applies. We believe that the proper focus is upon the offense to which a plea was actually entered, not the offense charged. This is not to say that the desired result could not be reached through other, legal means. For example, if the agreement had called for a guilty plea on the aggravated rape count to the lesser-included offense of aggravated sexual battery, a Class B felony, with an eight-year sentence at 100 percent, we would have no problem holding that the sentence was legal. Aggravated sexual battery is one of the offenses listed in Code section 40-35-501(i)(2). However, we are constrained to analyze the plea as it exists, not as it might have existed. See McConnell, 12 S.W.3d at 799-800 (examining sentence as actually structured by plea agreement, rather than whether the same result could be reached through other, permissible means).

[11]On order of this court, the parties submitted supplemental briefs addressing the propriety of three alternative dispositions: (1) setting aside the petitioner's plea agreement, vacating the conviction of especially aggravated sexual exploitation of a minor, and remanding to the trial court for further proceedings, (2) vacating the petitioner's conviction of especially aggravated sexual exploitation of a minor and remanding to the trial court for further proceedings pursuant to Tennessee Rule of Criminal Procedure 11(e)(4), or (3) modifying the petitioner's sentence to eight years at 30 percent service before release eligibility.

is indicative of the nature of such agreements.  As a general proposition, a plea agreement is a bargained-for exchange between the state and the defendant.  In exchange for the defendant's plea of guilty, the state often agrees to drop additional charges, to reduce the charge to which the defendant is to plead guilty, and/or to agree to a sentencing structure that is more favorable than the defendant might otherwise expect.  See generally Tenn. R. Crim. P. 11(e)(1) (concessions which may be made in plea bargaining); State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999) (nature of plea bargaining is "give and take" in order to reach resolution of pending charge(s)).  In exchange for the state's concession(s), the defendant may agree to accept a conviction and/or sentence which is different than that which he might have received had the charge(s) proceeded to trial.  In the present case, the defendant's bargain with the state resulted in the more serious aggravated rape charge being dismissed in exchange for the defendant's guilty plea and acceptance of an increased punishment for the less-serious charge of especially aggravated sexual exploitation of a minor.  Thus, it is apparent that the plea agreement benefitted both the state and the defendant.  To modify the defendant's sentence to 30 percent service would deprive the state of the great majority of its bargain and would confer an unjust benefit on the defendant.  Thus, we reject this alternative.[12]

In choosing the proper disposition, we are guided by the procedure that should have occurred in the trial court.  Upon presentation of the plea agreement, the trial court should have recognized that the proposed sentence was illegal.  Thus, the court should have rejected the agreement for the reasons we have explained above.  The court would then be obligated to advise the defendant of his right to withdraw the plea and that if he should chose not to withdraw his guilty plea, the disposition of his case may be less favorable than that for which the agreement called. Tenn. R. Crim. P. 11(e)(4).  In the present case, if the defendant maintains his guilty plea to especially aggravated sexual exploitation of a minor count, the court could then sentence him to any acceptable alternative under the Criminal Sentencing Reform Act of 1989.  Because the court will have rejected the proposed agreement, the state would not be required to move for dismissal of the aggravated rape count as required under the terms of the proposed agreement.  See generally Tenn. R. Crim. P. 11(e)(1)(A) (state may move for dismissal of other charges as part of plea agreement).  The defendant would then face further prosecution for the aggravated rape count, which could be disposed of by another plea agreement or trial.  On the other hand, if the defendant chooses to withdraw his plea, he would be free to enter into a different plea agreement with the state as to the two charges against him, or he could go to trial on the charges stated in the indictment.  See Tenn. R. Crim. P. 11(e)(2) (procedure upon parties reaching a plea agreement).

Accordingly, we believe the proper course is to reverse the trial court's denial of the defendant's petition for post-conviction relief, to vacate the defendant's conviction of especially aggravated sexual exploitation of a minor and its dismissal of the aggravated rape charge, and to remand to the trial court with instructions that the court reject the plea agreement disposing of both

---

[12]We believe the remedy of sentence modification is more appropriate where the defendant's conviction is the result of a trial on the merits, rather than a plea agreement.  See, e.g., State v. Smith, 891 S.W.2d 922 (Tenn. Crim App. 1994).  But cf. State v. Bruce Huffstetler, No. 212 (Tenn. Crim. App., Knoxville, Feb. 22, 1988) (illegal percentage of service of sentence modified on direct appeal where defendant was convicted pursuant to "open" guilty plea in which trial court determined manner of service of eight-year sentence).

charges based upon the illegality of the sentence. The trial court should then proceed in accord with Tennessee Rule of Criminal Procedure 11(e)(4) on the offense to which the defendant has pleaded guilty. Because the present plea agreement cannot be the basis for a valid judgment, it likewise cannot be the basis for dismissal of the aggravated rape charge. In this alternative, the aggravated rape charge would be resolved by plea agreement or trial. If the defendant does not wish to persist in his plea of guilty to especially aggravated sexual exploitation of a minor, then the matter may proceed with both the aggravated rape and especially aggravated sexual exploitation of a minor charges intact and subject to disposition by a new plea agreement or trial on the merits. Accord McConnell, 12 S.W.3d at 800; Dixon v. State, 934 S.W.2d 69, 74 (Tenn. Crim. App. 1996).

 

 

_____

JAMES CURWOOD WITT, JR., JUDGE