# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## MARCH 1999 SESSION

| | | |
|---|---|---|
| DARRELL W. LUNSFORD | ) | C.C.A. 03C01-9811-CC-00390 |
| | ) | GRAINGER COUNTY CIRCUIT |
| | ) | |
| Appellant, | ) | Hon. Rex Henry Ogle, Judge |
| | ) | |
| | ) | |
| vs. | ) | (POST-CONVICTION) |
| | ) | NO. 6533 |
| | ) | |
| STATE OF TENNESSEE | ) | |
| | ) | |
| Appellee. | ) | |

FOR THE APPELLANT:                     FOR THE APPELLEE:

DOUGLAS A. TRANT, ESQUIRE              PAUL G. SUMMERS
900 South Gay Street                   Attorney General & Reporter
Suite 1502
Knoxville, TN  37902                   R. STEPHEN JOBE
                                       Assistant Attorney General
                                       425 Fifth Avenue North
                                       2nd Floor, Cordell Hull Bldg.
                                       Nashville, TN 37243

FILED

July 19, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

AL. C. SCHMUTZER, JR.
District Attorney General

WILLIAM B. MARSH
Assistant District Attorney
339 East Main Street
Newport, TN  37821

OPINION FILED:_____

AFFIRMED

CORNELIA A. CLARK
Special Judge

## OPINION

Appellant appeals as of right the trial court's dismissal after a hearing of his post-conviction petition. He raises one issue on appeal: whether he was denied due process of law and effective assistance of counsel as the result of erroneous advice given by the trial court and counsel as to when he becomes eligible for parole when serving a life sentence. After a thorough review of the record, we affirm the judgment of the trial court.

## FACTS

Appellant was indicted on charges of first degree premeditated murder, felony murder, especially aggravated burglary, and theft under $500.00 A notice of intent to seek capital punishment was filed by the state, so the appellant was at risk for the imposition of the death penalty. After all proof was presented at trial and while the jury was deliberating its verdict, the state extended to appellant an offer of settlement involving a sentence of life imprisonment for the murder and twelve years for the aggravated burglary. Those sentences were to be served consecutively. Appellant also received a sentence of eleven months, twenty-nine days for theft, but that sentence was to be served concurrently. Appellant accepted the offer and entered a guilty plea on March 18, 1993. During the plea colloquy, the trial judge made the following statement about the possible penalties for the offenses charged or embraced in the indictments:

> THE COURT: So you are very much aware -- on first degree murder it's life or death, and that depends on aggravating circumstances outweighing beyond a reasonable doubt all mitigating circumstances. You know that penalty attaches both to the premeditated first degree murder, and it attaches also to felony first degree murder.
> You know that the range of penalties, I believe I told the jury, was eight to 12 on the especially aggravated burglary. You could be fined as much as $25,000 on that. You could be fined as much as $50,000 on a second degree murder conviction. The range on that is 15 to 25, I believe I told the jury.
> On the misdemeanor theft you could fined as much as $2,500 could be fined, and you could be sentenced to as much as 11 months and 29 days.
> How sentences run is important, sir. If you suffer more than one conviction the jury would not decide how they run, that's for the court -- for the Judge. There are reasons to run sentences consecutively; there

2

are reasons to run them concurrently. More often they run concurrently, which means all sentences run at the same time. So the greatest sentence you get is the only sentence you have, in effect. If you serve the greater one, anything smaller just falls by the wayside.

In appropriate cases, sir, for good cause, sentences can be run consecutive under Gray v. State. There are reasons for that. If they run consecutively, sir, then you have the aggregate, whatever it adds up to be. And so that would enhance and increase the punishment.

You are a standard, range one offender, I understand. You are a 30% offender, so you would ? the law says that you serve 30% of the sentence. The law also says that because we have prison crowding that 40% of that is lopped off at the top, at the front end, so you won't serve 30%. 40% of that 30% is gone at the front by statute.

Actually, how long you would serve, sir, I cannot tell you. Mr. Hagood can't tell you, General Schmutzer can't tell you, no one can tell you; we do not know. But the sentence that is imposed would be subject to the Department of Corrections. It would be entirely out of my hands, out of our hands. Did you understand that, sir?

DEFENDANT LUNSFORD: Yes, sir.

At a later point in the proceedings, and in the presence of the jury, the

following colloquy occurred:

GENERAL SCHMUTZER: The recommendation of the State, is, Your Honor, that he receive life imprisonment on the first degree murder, and that he receives the maximum of 12 years on the aggravated burglary, and they are to run consecutively. As I understand the law, of course, he's pled guilty to felony murder, but those merge as a matter of law -- they merge into one. There can only be one conviction.

THE COURT: It does merge, yes, sir.

GENERAL SCHMUTZER: So that would be life plus 12 years, which is the maximum he can get under the law, other than death.

THE COURT: And 11-29 on the theft; is that what you said?

GENERAL SCHMUTZER: Right, Your Honor, concurrent.

THE COURT: Stand up, please, Mr. Lunsford. Mr. Lunsford, is that the recommendation you expected would be made to me, sir?

DEFENDANT LUNSFORD: Yes, sir.

THE COURT: That's what you understood?

DEFENDANT LUNSFORD: Yes, sir.

On March 13, 1996, appellant filed a Petition for Post-Conviction

Relief,

asserting four grounds: (1) the trial judge improperly advised appellant about

his parole eligibility, thereby depriving appellant of due process; (2) trial

3

counsel was ineffective for failing to object to or correct the advice given by the court; (3) the trial judge violated Rule 11, Tenn. R. Crim. P., by providing erroneous advice about appellant's right against self-incrimination; and (4) trial counsel was ineffective for failing to object to this error. On October 28, 1998, the Court conducted an evidentiary hearing. Three witnesses testified.

The appellant's father[1] testified that he attended the March 1993 trial of his son. He and other family members were present when trial counsel discussed the plea offer extended by the state during jury deliberations. Mr. Lunsford recalled the conversation as follows:

> A. He told me and all the group that was gathered there that if Darrell would plead guilty to the charges that he would get a life sentence which would then be reduced by forty percent or thirty; there was two numbers, one was forty percent and then another thirty percent. One was for, because he was a first time offender, he'd never been in trouble before and he got caught up in this and he was first time and he would get a reduction of that life sentence. And then he would get another forty percent off that due to prison over-crowding and situations in the State pen facilities that would dictate another reduction in that. And with good time in prison, not getting in any trouble or anything that he would possibly be ready for parole in about twelve years from the time of sentencing if he would take that plea. That's what he said that he and . . .
> THE COURT: Now what was the last thing you say he said?
>
> A: If he would plead guilty to the charges that that would be the sentence, life with the forty, I can't remember. There was two figures; one was forty percent off and one was thirty percent off.
>
> THE COURT: So he said that he could possibly get out in twelve years?
>
> A: Twelve years from that date that he would be eligible for parole.
>
> Q: For parole?
>
> A: Yeah.

---

[1] The appellant's father is also named Darrell Lunsford. He will be referred to as "Mr. Lunsford."

4

THE COURT: Possibly?

A: Yeah.

THE COURT: Okay.

A. But that would, you know, depending on if he was good in prison and that kind of thing, yeah.

Mr. Lunsford continued to be confused about the thirty and forty percent numbers. He also thought that the sentence for aggravated burglary was to run concurrently with the life sentence, but later testified that he did not recall that part of the conversation.

The appellant next testified that when his counsel first explained the plea offer:

A. He told me that I would have a life sentence and I said well, how much time is a life sentence and he said a life sentence is calculated at sixty years. And he said that they were going to knock forty percent off the front end of it and I'd do thirty percent of that. And I asked him how much that would be and he said about twelve and a half years.

He later learned that he would not be eligible for parole until he had served thirty-six calendar years. He stated that he would not have pled guilty if he had understood that fact earlier. He stated further that he understood the judge's discussion about parole eligibility to apply to the sentence for murder as well as to that for aggravated burglary. He also testified that he believed the twelve year sentence ran concurrent with the life sentence.

On cross-examination appellant stated that he pled guilty in part because his parents wanted him to do so. He acknowledged that the trial judge advised him that his total sentence was life plus twelve years. He further acknowledged that trial counsel did not say he would be released in twelve years, only that he might be eligible for parole at that time.

Trial counsel testified last. He stated that no plea offer was extended by the state at any time prior to

trial, even though he had solicited such an offer.  During jury deliberations the state extended a settlement offer identical to that previously accepted by the co-defendant. Counsel visited the appellant in a holding cell and discussed the offer.  No one else was present.  Counsel later discussed the offer with members of appellant's family.  Counsel testified that

5

the appellant's main concern throughout the case was the possible imposition of the death penalty. Counsel acknowledged providing advice about Range I release eligibility dates and safety provisions:

> A. I'm sure that I told him that he was a, what the offer was and
> that he was a Range I offender and what that meant, that basically at the time that that was, that meant that he would serve thirty percent of his sentence before he would be eligible for any sort of review and I think at that time the safety valve, and I'm not sure what the percentages were, I think if I recall from looking at the Transcript it was forty percent. I thought that it was thirty-five, forty percent was in effect and that may or may not have a play in when he may be eligible. I knew that he was a young man, that I thought this gave him an opportunity to possibly be released. Now I didn't tell him when because I didn't know and he knew that that wasn't within my control and I communicated that to him. I can't tell this Court with certainty any exact number or if I gave him an exact number but we talked for some period of time and he was very relieved that an offer had been extended to him. And frankly so was I and so was his family.

Counsel had tried to obtain a settlement offer prior to trial, but was unsuccessful. According to him, appellant was "scared to death" about the prospect of having the death penalty imposed. Counsel believed the evidence against his client was strong, including admissions made by the appellant and his shirt containing the victim's blood. Counsel emphasized that he never told appellant precisely when he might be released.

After hearing all the proof the post-conviction court denied appellant's petition. A written order including findings of fact and conclusions of law was filed November 13, 1998. The court concluded that although appellant had received erroneous information about the length of the sentence he would have to serve, that error was not the basis for his decision to plead guilty. The court found that the appellant accepted the first plea offer extended to him by the state, in order to avoid the possible imposition of the death penalty. The post-conviction

court also found that appellant had acknowledged that he knew neither the trial court, trial counsel, nor the district attorney general could predict his parole eligibility date. The court found that appellant was sentenced accurately. Therefore, the court found that appellant had not

6

carried his burden of proof on the issues raised in the post-conviction petition.

## ANALYSIS

In post-conviction proceedings, the petitioner has the burden of proving the grounds raised in the petition by clear and convincing evidence. Tenn. Code Ann. ?40-30-210(f). When reviewing the dismissal of a post-conviction petition, this court must affirm the judgment of the trial court unless the evidence in the record preponderates against the court's findings. Cooper v. State, 849 S.W. 2d 744, 746 (Tenn. 1993).

In Tennessee, the accused has a constitutional right to the effective assistance of counsel at all critical stages of a criminal prosecution. Tenn. Const. Art. I, § 9; Powell v. Alabama, 287 U.S. 45, 77 L.Ed. 158, 53 S. Ct. 55 (1932); McKeldin v. State, 516 S.W. 2d 82, 86 (Tenn. 1974). In order to establish ineffectiveness under the standard established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984), a criminal defendant must show both that (1) counsel's performance was deficient and that (2) the deficiency was sufficient to undermine the confidence in the outcome of the proceeding. 466 U.S. at 694, 104 S.Ct. at 2064. In Tennessee, the appropriate test for determining whether counsel provided effective assistance is whether his advice and services were within the range

of competence demanded of trial attorneys in criminal cases. Baxter v. Rose, 523 S.W. 2d 930, 936 (Tenn. 1975).

The standard is adjusted, however, in the context of a guilty plea. To set aside a guilty plea because of ineffective assistance of counsel, the attorney's performance must be deficient as defined in Strickland. To satisfy the second prong or "prejudice" requirement of the Strickland test, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed. 2d 203 (1985); Dixon v. State, 934 S.W. 2d 69, 72 (Tenn. Crim. App. 1996).

7

The rules of appellate review are well-established. First, this court cannot reweigh or reevaluate the evidence; nor can it substitute its inferences for those drawn by the trial court. State v. Harris, 839 S.W. 2d 54, 75 (Tenn. 1992). Second, questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are matters resolved by the trial court. State v. Williams, 657 S.W. 2d 405, 410 (Tenn. 1983). Third, the petitioner has the burden of establishing that the evidence in the record preponderates against the findings of the trial court. Butler v. State, 789 S.W. 2d 898, 900 (Tenn. 1990).

It is not disputed that certain Range I release eligibility criteria do not apply to a conviction for first degree murder. For example, Tenn. Code Ann. §40-35-501(h)(1) provides that a defendant serving a sentence of life for first degree murder is not eligible for release until he has served sixty percent (60%) of sixty (60) years less sentence credits earned and retained, but in no event less than twenty-five (25) calendar years. This subsection also excludes such defendants from the governor's authority to release under Title 41, Chapter 1, Part 5, Tenn. Code Ann. To the extent that counsel and the court provided different information at the time appellant's plea was entered, a mistake occurred.

However, this does not end our analysis for several reasons. First, the plea colloquy between appellant and the trial judge is susceptible of two interpretations, one of which is that the judge's reference to release eligibility matters was only intended to apply to the especially aggravated burglary conviction and not to the murder conviction. The court in its early reference to

first degree murder explains that the available penalties for that offense are life in prison or death. Only after mentioning the other offenses does the court make reference to appellant's status as a Range I offender. It is possible to read the record without determining that the trial court erred in explaining release eligibility.

8

Second, even if the trial court erred in its explanation, relief is available in post-conviction proceedings only where the error is of constitutional dimension. Tenn. Code Ann. ?40-30-105. A guilty plea must pass constitutional muster in order to be valid. E.g. Blackenship v. State, 858 S.W. 2d 897 (Tenn. 1993). However, a guilty plea is not rendered constitutionally infirm because a criminal defendant is not informed about the details of his parole eligibility, including the possibility of being ineligible for parole. King v. Dutton, 17 F.3d 151, 154 (6th Cir. 1994). Thus, that the trial court did not inform the petitioner accurately about the parole eligibility for a conviction of murder does not afford the petitioner a claim for relief cognizable in this proceeding. See Wilson v. State, 899 S.W. 2d 648, 652 (Tenn. Crim. App. 1994). In Wilson we held that, in the context of a post-conviction attack on a sex offender's guilty plea, the trial court was not required to advise the offender about the requirements he must meet in order to be released on parole. This issue is therefore without merit as it relates to the actions of the trial judge.

As for trial counsel, proof that he gave erroneous parole advice that induced appellant to forego his right to a jury trial can be used to establish a claim for ineffective assistance of counsel. Walton v. State, 966 S.W. 2d 54 (Tenn. Crim. App. 1997). However, the burden

still remains on appellant to show that but for counsel's erroneous advice he would not have pled guilty. The post-conviction court found unequivocally that the second prong of the <u>Strickland</u> test was not satisfied. Any error in informing appellant about his parole release eligibility was not a factor in his decision to plead guilty. The post-conviction court specifically made a finding against appellant's credibility in this regard.

At the time he entered his plea, appellant had already heard all the proof presented at trial. He was advised during the plea colloquy that the sentence of twelve years was "the maximum he can get under law, other than death." The court found that he accepted the plea extended to him during jury

deliberations in order to avoid possible imposition of the death penalty. He fully understood that no one could predict specifically when he might be granted parole. He was advised that his felony sentences were to run consecutively. Based on these findings, the post-conviction court found that appellant had not carried his burden of proof on any issue raised in the petition.

Questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are matters resolved by the trial court, State v. Williams, 657 S.W. 2d 405, 410 (Tenn. 1983), and the post-conviction judge accredited the testimony given by the trial attorney. In our view, the record does not preponderate against the post-conviction court's conclusion that appellant's plea was knowing and voluntary and that his trial counsel rendered effective assistance to him. Therefore, we affirm the judgment of the trial court.

                                _____

                                  CORNELIA A. CLARK
                                  SPECIAL JUDGE

_____

GARY R. WADE
PRESIDING JUDGE

_____

JOSEPH M. TIPTON
JUDGE

**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**MARCH 1999 SESSION**

| | | |
|---|---|---|
| DARRELL W. LUNSFORD | ) | C.C.A. 03C01-9811-CC-00390 |
| | ) | GRAINGER COUNTY CIRCUIT |
| | ) | |
| Appellant, | ) | Hon. Rex Henry Ogle, Judge |
| | ) | |
| | ) | |
| vs. | ) | (POST-CONVICTION) |
| | ) NO. 6533 | |
| | ) | |
| STATE OF TENNESSEE | ) | |
| | ) | |
| Appellee. | ) | |

**JUDGMENT**

Came the appellant, Darrell W. Lunsford, represented by counsel and also came the attorney general on behalf of the State, and this case was heard on the record on appeal from the Circuit Court of Grainger County; and upon consideration thereof, this court is of the opinion that there is no reversible error in the judgment of the trial court.

Our opinion is hereby incorporated in this judgment as if set out verbatim.

It is, therefore, ordered and adjudged by this court that the judgment of the trial court is Affirmed, and the case is remanded to the Circuit Court of Grainger County for any necessary further proceedings consistent with the opinion in this cause.

It appearing that the petitioner, Darrell W. Lunsford, is indigent, costs of the appeal are taxed to the State of Tennessee.

**PER CURIAM**

Gary R. Wade, Presiding Judge

Joseph M. Tipton, Judge
Cornelia A. Clark, Special Judge